**H**

Luciano v. Coca-Cola Enterprises, Inc.
D.Mass.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Massachusetts.
Debra LUCIANO
v.
COCA-COLA ENTERPRISES, INC., Walter Gordon, Douglas Smith, and Joseph Papapietro
**No. Civ.A.02-10895-RGS.**

Aug. 30, 2004.

Floyd H. Anderson, Campo Anderson LLP, Boston, MA, for Plaintiff.
John R. Bode, Joseph Y. McCoin, III, Miller & Martin LLP, Chatanooga, TN, Michael L. Rosen, Foley Hoag LLP, Boston, MA, for Defendants.

*FURTHER MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

STEARNS, J.

*1 In a prior decision, *Luciano v. Coca-Cola Enterprises, Inc.,* 307 F.Supp.2d 308 (D.Mass.2004), the court dismissed plaintiff Debra Luciano's job status discrimination and constructive discharge claims, as well as her common-law tortious interference claims. Among other reasons for the dismissal was the fact that several of the "adverse" acts cited by Luciano fell outside of the statute of limitations. The court, however, *sua sponte,* raised the issue of whether Luciano's complaint could be read to allege a claim of "hostile environment," the more generous limitations rule of which permits a plaintiff to capture an entire course of abusive treatment so long as at least one unlawful employment practice occurred within the 180 or 300-day time period permitted for the filing of an administrative charge. *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 117-118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The court asked for supplemental briefs on two issues: (1) whether Luciano's filing with the Massachusetts Commission Against Discrimination (MCAD) could be fairly construed to give notice of a hostile environment claim, and if so, (2) whether such a claim would be legally viable. Having reviewed the additional briefs, I am of the view that Luciano did not give sufficient notice of such a claim, and that even if she had, such discrimination as she alleges was not "so severe and pervasive" that a reasonable person would have found it hostile and abusive. The facts are fully set out in the court's published opinion and will only be touched upon here as necessary.

*The Administrative Charge*

Federal and state law require that an administrative charge be filed by a claimant before an employment discrimination lawsuit may be brought. The purpose of the charge-filing requirement "is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation."*Lattimore v. Polaroid Corp.,* 99 F.3d 456, 464 (1st Cir.1996); *Powers v. Grinnell Corp.,* 915 F.2d 34, 37 (1st Cir.1990) (same).*SeealsoDavis v. Lucent Technologies, Inc.,* 251 F.3d 227, 231 (1st Cir.2001); *Carter v. Commissioner of Correction,* 43 Mass.App.Ct. 212, 217, 681 N.E.2d 1255 (1997).

That purpose would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action. Consequently, we have stated that, in employment discrimination cases, "[t]he scope of the civil complaint is ... limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge."*Powers,* 915 F.2d at 38 (quoting *Less v. Nestle Co.,* 705 F.Supp. 110, 112 (W.D.N.Y.1988)); *seealsoJohnson v. General Electric,* 840 F.2d 132, 139 (1st Cir.1988).

*Lattimore,* 99 F.3d at 464.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

GOVERNMENT EXHIBIT 4

Coca-Cola cites a persuasive recent district court decision, *Kenney v. MML Investors Servs., Inc.,* 266 F.Supp.2d 239 (D.Mass.2003) (Ponsor, J.). In *Kenney,* the *pro se* plaintiff's administrative charge alleged race discrimination and constructive discharge. When she filed her lawsuit, she added additional sex-based claims, including a hostile environment claim based on gender discrimination. *Id.* at 243-244.Judge Ponsor, while agreeing that the constructive discharge claim had been properly presented (plaintiff in her charge had "provided 'particulars' which twice mention[ed] constructive discharge"), dismissed the additional claims based on sex-discrimination with the observation that a "[p]laintiff ought to be limited to the four corners of her charge."*Id.* at 245.

*2 Luciano's charge, which was not filed *pro se,* but with the assistance of attorneys, recapitulated at length the discrete incidents which ultimately led to Luciano's resignation from Coca-Cola. The charge never mentioned the term "hostile environment," or even the term "sexual harassment." While in examining a charge the focus is not on "literary exactitude," or even legal accuracy (in the sense of probing the charge for facts sufficient to make out a prima facie case), there is a fundamental policy concern that the charge give adequate notice to government investigators and the employer of the nature of a plaintiff's claims. *Lattimore,* 99 F.3d at 464-465. *SeealsoWhite v. New Hampshire Dep't. of Corrections,* 221 F.3d 254, 263 (1st Cir.2000). From what is said in Luciano's charge, it would not have been understood by a reasonable investigator, much less Coca-Cola, that she was attempting to assert a hostile environment claim.[FN1]

FN1. As a factual matter, it is almost certain that this was not Luciano's intent. It is telling, as Coca-Cola notes, that Luciano's opposition memorandum to the motion for summary judgment did not allude to a hostile environment claim.

*The Hostile Environment Claim*

This court's earlier holding that Luciano's claim of a constructive discharge cannot be sustained on the facts as alleged is buttressed by the recent decision of the Supreme Court in *Pennsylvania State Police v. Suders,* ---U.S. ----, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). In *Suders,* the Court for the first time recognized a cause of action for constructive discharge in a Title VII context. A constructive discharge, according to *Suders,* can be shown in one of two ways. In the usual case, "the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions."*Id.* at 2347.Luciano, as the court made clear in its earlier opinion, cannot point to any adverse action taken by Coca-Cola of such a humiliating or demeaning nature that a reasonable person would have felt that she had no recourse but to resign. *Luciano,* 307 F.Supp.2d at 320-321. An actionable constructive discharge also occurs when, despite the absence of an employer-sanctioned adverse action, a plaintiff can show that she was exposed to an "abusive work environment ... so intolerable that her resignation qualified as a fitting response."*Suders,* --- U.S. at ----, 124 S.Ct. at 2347. This latter form of constructive discharge, requires "something more" than the quantum of proof necessary to sustain a claim of sexual harassment or hostile work environment. "A plaintiff who advances such a compound [hostile-environment constructive discharge] claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign."*Id.* at 2354.Again, as the court previously found, this is a standard that Luciano cannot meet.

While Luciano's resignation from Coca-Cola NE was motivated by her displeasure with Gordon's negative evaluation and by perceived footdragging on the part of Smith and Papapietro in responding to her complaints, it is impossible to see how her working conditions could be deemed unbearable. Many of her complaints seem relatively insignific-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ant (her discomfort at participating in supposedly male-oriented games, and her pique at not being invited to a Red Sox outing). While others carry more weight (the transfer of subordinates, Gordon's refusal to meet with her privately to discuss sales strategy, his undermining of her authority, and his recision of her role as a presenter to senior management), Luciano fails to show how any of these incidents, singly or collectively, created such an inability to perform her job that resignation was her only plausible choice. By Luciano's own account, she was performing successfully (and for that reason was especially resentful of Gordon's negative evaluation)."[T]he fact that the plaintiff endured a hostile work environment-without more-will not always support a finding of constructive discharge. To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment. Rather, the jury must find that the working conditions were so unpleasant that 'staying on the job while seeking redress [would have been] intolerable." ' *Marrero,* 304 F.3d at 28. At a minimum, a reasonable person would have expected Luciano to await the results of the 360 review and the response of senior management to its findings before tendering her resignation. Consequently, the constructive discharge claim cannot survive as a matter of law.

***3** *Luciano,* 307 F.Supp.2d at 321.

There remains the issue of whether Luciano has produced sufficient evidence to show that she was exposed to an "abusive" working environment in which gender hostility was so pervasive that the conditions of her employment were effectively altered. "Hostile environment harassment is readily distinguishable from 'job status' discrimination, another type of employment discrimination that occurs when action is taken that adversely affects an employee's job status, remuneration or benefits and it is based upon the employee's membership in a protected class. Thus, when both harassment and 'job status' discrimination claims are made, they are analyzed separately."*Lattimore,* 99 F.3d at 463. The elements a plaintiff must prove to succeed on a hostile environment claim are that: (1) she is a member of a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the terms or conditions of the plaintiff's employment; (5) that the conduct complained of was both objectively and subjectively offensive; and (6) that some basis for employer liability has been established. *Brown v. Hot. Sexy and Safer Productions, Inc.,* 68 F.3d 525, 540 (1st Cir.1995), citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66-73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)."[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."*Harris v. Forklift Sys.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Gender-based harassment need not be overtly sexual, but may be based on gender hostility. *O'Rourke v. City of Providence,* 235 F.3d 713, 729-730 (1st Cir.2001).*SeealsoOncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 79-80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).FN2

FN2. Massachusetts law with respect to a hostile environment claim under G.L. c. 151B parallels Title VII. *SeeCuddyer v. The Stop & Shop Supermarket Co.,* 434 Mass. 521, 533, 535, 750 N.E.2d 928 (2001). Because sexual harassment is defined by Chapter 151B as including the creation of a "sexually offensive work environment," its remedies are not limited to harassment of the opposite sex, or same-sex harassment involving homosexual supervisors. *Meinychenko v. 84 Lumber Co.,* 424 Mass. 285, 290, 676 N.E.2d 45 (1997).*Seealso Muzzy v. Cahillane Motors, Inc.,* 434 Mass. 409, 412-413, 749 N.E.2d

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> 691 (2001) (adopting the "severe and pervasive" standard set out in *Oncale,* 523 U.S. at 78).

The relevant factors must be viewed objectively and subjectively. If the conduct is not so severe or pervasive that a reasonable person would find it hostile or abusive, no Title VII right is implicated. Similarly, if the plaintiff does not subjectively view the environment to be abusive, the conduct has not actually altered the conditions of her employment. *Harris,* 510 U.S. at 21-22. "Subject to some policing at the outer bounds, it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment."*Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 18 (1st Cir.2002)*quoting Gorski v. N.H. Dept. of Corrections,* 290 F.3d 466, 474 (1st Cir.2002). Luciano's case lies beyond the bounds of a triable case. She does not allege any overtly sexual conduct of a *quid pro quo* nature. While she does complain of managerial insensitivity, she points to no significant incident that a reasonable person would attribute to gender animus. Rather she describes a pressured atmosphere of uncivil treatment directed at her and her co-workers, male and female alike, by senior Coca-Cola managers. The purpose of the employment discrimination laws is to eliminate discrimination in the workplace, not to create or enforce a code of managerial etiquette. "Merely because a supervisor is overbearing or fellow employees unsociable and hard to get along with, does not suffice [to make out a hostile environment claim] unless underlying motives of a sexual or gender discriminatory nature are implicated."*Morrison v. Carleton Woolen Mills, Inc.,* 108 F.3d 429, 441 (1st Cir.1997). Because Luciano cannot establish a connection between gender animus and the incidents to which she took offense, her hostile environment claim necessarily fails.

### *ORDER*

*4 For the foregoing reasons, Coca-Cola's motion for summary judgment is *ALLOWED.*Judgment will enter for defendants.

SO ORDERED.

D.Mass.,2004.
Luciano v. Coca-Cola Enterprises, Inc.
Not Reported in F.Supp.2d, 2004 WL 1922137 (D.Mass.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.