Atkins v. Astrue
N.D.Ga.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Georgia,Atlanta Division.
Jim ATKINS, Plaintiff,
v.
Michael J. ASTRUE, Commissioner, Social Security Administration, Defendant.
**Civil Action File No. 1:07-CV-1180-TWT.**

Dec. 5, 2007.

Stephen M. Katz, Law Offices of Stephen M. Katz, Marietta, GA, for Plaintiff.
Alonzo H. Long, Office of United States Attorney, Atlanta, GA, for Defendant.

*ORDER*

THOMAS W. THRASH, JR., District Judge.
***1** This is an employment discrimination action in which the Plaintiff contends that the Defendant discriminated against him by failing to give him a Recognition of Contribution Award in 2005. It is before the Court on the Report and Recommendation [Doc. 16] of the Magistrate Judge recommending granting the Defendant's Motion for Summary Judgment [Doc. 2]. The Plaintiff's Objections are without merit. The Court approves and adopts the Report and Recommendation as the judgment of the Court. The Defendant's Motion for Summary Judgment [Doc. 2] is GRANTED.

SO ORDERED.

***FINAL REPORT AND RECOMMENDATION***

JANET F. KING, United States Magistrate Judge.
Plaintiff Jim Atkins filed the above-styled employmênt discrimination action against Defendant Michael Astrue, Commissioner of the Social Security Administration, on May 23, 2007. [Doc. 1]. Plaintiff Atkins alleges that Defendant subjected him to sex discrimination, race discrimination, "gender hostility," and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*[Doc. 1]. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant has moved for summary judgment [Doc. 2] on Plaintiff's claims based upon the pleadings, statement of material facts, exhibits, and discovery materials submitted by the parties.FN1

> FN1. Defendant brought the motion in the alternative, that is, seeking dismissal pursuant to Fed.R.Civ.P. 12(b) for failure to state a claim or as a motion for summary judgment. [Doc. 2]. Because the parties submitted materials in addition to the pleadings in moving for and opposing Defendant's motion which the court will consider, the court is required to treat the motion as one for summary judgment. *See*Fed.R.Civ.P. 12(b); *Property Management & Investments, Inc. v. Lewis,* 752 F.2d 599, 604 (11th Cir.1985) ("once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment").

**I. Facts**

When evaluating the merits of a motion for summary judgment, the court must view the evidence and factual inferences in a light most favorable to the non-moving party. *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987). However, unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 714 (11th Cir.1984). Therefore, the evidence presented by the parties having been evaluated in accordance with the foregoing principles, the following facts are deemed to be true for the limited

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

GOVERNMENT EXHIBIT 5

purpose of evaluating Defendant's motion [Doc. 2] for summary judgment.

Plaintiff Jim Atkins is an African-American male who has been employed with the Social Security Administration ("SSA") for 32 years since joining in 1975. [Plaintiff's Statement of Material Facts ("PSMF") ¶ 1]. In approximately July of 2001, Plaintiff began working as a GS-12 Management Support Specialist ("MSS") in the Center for Disability. [Plaintiff Declaration ("Pla. Dec.") ¶ 4]. Brenda Stewart became Director of the Center for Disability in 2002, and Plaintiff worked under her supervision. [Pla. Dec. ¶ 7]. Plaintiff stated in his declaration that he first began working for Stewart in 1994 and that she "began acting in a hostile manner towards [Plaintiff] soon after the beginning of [their] working relationship."[Pla. Dec. ¶¶ 3, 5].

In June of 2005, Plaintiff left the Center for Disability and began a temporary assignment with the Combined Federal Campaign. [Doc. 2, Ex. 2 at 20-23, 28-29]. After this assignment ended in January 2006, Plaintiff began working as an MSS in the Georgia Area Office in Decatur. [Defendant's Statement of Material Facts ("DSMF") ¶ 1]. The last time Plaintiff worked directly for Brenda Stewart was in June of 2005. [Doc. 2, Ex. 2 at 20-23, 28-29].

***2** SSA utilized four types of performance awards: Recognition of Contribution ("ROC"); Commendable Act of Service Award ("CASA"); On-the-Spot ("OTS"); and Time-Off ("TO") awards. ROC was the most prestigious of the four awards and carried the highest monetary value. [DSMF ¶ 3]. The awards process differed for bargaining unit and non-bargaining unit employees. For non-bargaining unit employees, Stewart was solely responsible for determining the amount and recipients of ROC, CASA, OTS and TO awards. [DSMF ¶ 4]. Stewart still retained discretion to allocate ROC awards to bargaining unit employees, but an Awards Panel was formed to solicit nominations and make decisions on CASA, OTS and TO awards. [DSMF ¶ 5]. The Awards Panel could only give a CASA, OTS or TO award to bargaining unit employees who were nominated. [DSMF ¶ 5].

Stewart stated in her declaration that Plaintiff was a bargaining unit employee during his tenure in the Center for Disability. [Stewart Dec. ¶ 48]. Plaintiff, however, has asserted that he is a non-bargaining unit employee. [Pla. Dec. ¶ 4]. Plaintiff wrote in his declaration:

In July, 2001, I was "detailed" to the Center for Disability as a Management Support Specialist. A Management Support Specialist is my official duty station and is by definition, a non-bargaining position.... It is not plausible that during my detail with the Center for Disability that my status suddenly changed from that of non-bargaining to bargaining unit employee.

[Pla. Dec. ¶ 4].

Stewart previously gave Plaintiff a ROC award for fiscal year 2004. [DSMF ¶ 8]. However, Stewart stated in her declaration that she did not find anything out of the ordinary or exceptional about Plaintiff's performance during the fiscal 2005 period. [Stewart Dec. ¶ 47]. Stewart believed that a lesser performance award such as a CASA may have been appropriate. [DSMF ¶ 10]. Stewart stated, "While it may have been appropriate to give Mr. Atkins a lesser award such as a CASA, such a decision would have to be taken by the awards panel because he was a bargaining unit employee."[Stewart Dec. ¶ 48].

Plaintiff was nominated for an award by his Project Manager, Francine Jefferson. [DSMF ¶ 12]. The Awards Panel, however, unanimously concluded that Plaintiff could not be given a CASA, OTS or TO award based on this nomination because it only described Plaintiff's performance and accomplishments which occurred outside of the time period under consideration. [DSMF ¶ 13].

Plaintiff Atkins stated that in 2006, he offered to submit testimony on behalf of an employee named

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Vera Goodridge who had filed an EEOC complaint against Stewart. [Pla. Dec. ¶ 12]. Later, Plaintiff was a member of the Awards Panel and recommended Goodridge for a CASA award and a TO award. [*Id.*]. Plaintiff alleged in his declaration that, although the Awards Panel unanimously agreed to give her both awards, Goodridge only received the TO award at the time awards were announced. [*Id.*]. Plaintiff stated:

***3** When I inquired as to the reason management had overruled the panel's decision and denied Ms. Goodridge the award I was warned by Charles Tarver to "leave it alone." Three months later the ROC awards for fiscal year 2005 were announced but I was not awarded one by Ms. Stewart. I firmly believe my support of Ms. Goodridge in both her EEOC complaint against Ms. Stewart and my sponsorship of her nomination for a later CASA award resulted in retaliation by Ms. Stewart in denying me the ROC award for 2005.

[Pla. Dec. ¶¶ 12, 13].

On August 17, 2006, Plaintiff Atkins initiated contact with an Equal Employment Opportunity ("EEO") Counselor. [Doc. 2, Ex. 2 at 1]. Plaintiff alleged that he had been subjected to retaliation and discrimination on the basis of race and sex when he was denied a ROC performance award. [Doc. 2, Ex. 2 at 1-2]. On September 15, 2006, Plaintiff filed a formal complaint of discrimination. [Doc. 2, Ex. 2 at 4, and Ex. 3 at 1]. A letter from the SSA notifying Plaintiff that his complaint had been accepted stated, in pertinent part: "You claim that based on your sex (male), race (Black) and in retaliation for a prior incident, you were not given a Recognition of Contribution (ROC) award in August 2006. You also claim that management denied you the opportunity to self-nominate for the ROC award."[Doc. 2, Ex. 3 at 1]. In his administrative affidavit dated January 3, 2007, Plaintiff acknowledged that the issues he was complaining about were the denial of a ROC award and the opportunity to self-nominate. [Doc. 2, Ex. 4 at 1]. He also contended that he had "been discriminated over the years by Ms. Stewart" and added, "I would like for this complaint to include my age (over 40) and Ms. Stewart's pattern or practice of discrimination against older Black Males."[Doc. 2, Ex. 4 at 1].

Additional facts will be set forth below as they become necessary for discussion of Plaintiff's claims.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c).Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ."*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The movant bears the initial burden of asserting the basis of its motion, and that burden is a light one. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The movant is not required to negate its opponent's claim. *See id.*Rather, the movant may discharge this burden merely by " 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. When this burden is met, the non-moving party is then required to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*4 While the evidence and factual inferences are to be viewed in a light most favorable to the non-moving party, *see Rollins,* 833 F .2d at 1529;*Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987), that party "must do more than simply show that there is some metaphysical doubt as to the material facts,"*Matsushita Electrical Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with specific facts showing there is a genuine issue for trial. *See id.* at 587.An issue is not genuine if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249-50, 106 S.Ct. at 2511;*accord Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir.1988). Similarly, substantive law will identify which facts are material. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element essential to its case. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553;*Rollins,* 833 F.2d at 1528.

**III. Discussion**

Plaintiff Atkins alleges that the SSA subjected him to sex discrimination, race discrimination, "gender hostility," and retaliation in violation of Title VII. [Doc. 1]. According to Plaintiff's complaint, he was sexually harassed and denied a performance award on the basis of his race and sex and in retaliation for prior complaints of discrimination. [*Id.* at 8-9]. Defendant argues that summary judgment is warranted on all of Plaintiff's claims. [Doc. 2].

**A. Sexual Harassment/Hostile Work Environment**

Defendant argues that Plaintiff Atkins' claim of sexual harassment ("gender hostility") cannot survive summary judgment because he failed to exhaust his administrative remedies before filing his claim in this court. [Doc. 2 at 4-9]. A federal employee, such as Plaintiff, must exhaust all of his administrative remedies before litigating Title VII discrimination claims in federal court. *See Grier v. Secretary of the Army,* 799 F.2d 721, 724 (11th Cir.1986) (citing *Brown v. General Services Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967-68, 48 L.Ed.2d 402 (1976)); *Wade v. Secretary of the Army,* 796 F.2d 1369, 1373 (11th Cir.1986). Under the applicable federal regulations for claims of violations of Title VII, federal employees must comply with the agency regulations for timely reporting of claims to the agency EEO and follow through with filing a formal complaint on any claims that are not resolved informally. The exhaustion requirement includes 29 C.F.R. § 1614.105(a)(1), which states that federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap ...*must initiate contact with [an EEO] Counselor within 45 days* of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."29 C.F.R. § 1614.105(a)(1) (emphasis added); *see also Foxx v. Dalton,* 46 F.Supp.2d 1268, 1274 (M.D.Fla.1999). Only after complying with these procedures may a federal employee file a lawsuit in federal court on claims of discrimination pursuant to Title VII. *See Grier,* 799 F.2d at 724;*Baker v. Peters,* 145 F.Supp.2d 1251, 1255 (M.D.Ala.2000).

*5 In the present case, Plaintiff Atkins first initiated contact with an EEO Counselor on August 17, 2006. [Doc. 2, Ex. 2 at 1]. This means that any allegedly discriminatory action which occurred before July 3, 2006, is time-barred. Plaintiff asserts in his complaint that he was subjected to sexual harassment by Brenda Stewart, Director of the Center for Disability. [Doc. 1; Pla. Dec. ¶ 7]. However, Defendant correctly notes that Plaintiff did not even work with Stewart at any time after June 2005, at which time Plaintiff left the Center for Disability and began a temporary assignment with the Combined Federal Campaign. [Doc. 2 at 5, and Ex. 2 at 20-23, 28-29; Doc. 15 at 6]. After this assignment ended in January 2006, Plaintiff began working as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

an MSS in the Georgia Area Office in Decatur. [DSMF ¶ 1]. Given the fact that the last time Plaintiff worked with Stewart was in June of 2005, Plaintiff is unable to show that Stewart sexually harassed him at any time on or after July 3, 2006. [Doc. 2, Ex. 2 at 20-23, 28-29]. Plaintiff's failure to initiate contact with an EEO Counselor within forty-five days of any alleged harassment or hostile work environment precludes him from bringing a Title VII claim on the basis of this alleged conduct. Summary judgment, therefore, is warranted on this claim.

Even assuming *arguendo* that Plaintiff had timely initiated contact with an EEO Counselor, summary judgment would be granted on Plaintiff's harassment claim because he did not allege a hostile work environment or harassment at the administrative level. "The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation."*Eastland v. Tennessee Valley Authority,* 714 F.2d 1066, 1067 (11th Cir.1983). The court may also consider any type of discrimination that is "like or related" to the EEOC charges or that grows out of the EEOC investigation. *See id.; Waldemar v. American Cancer Society,* 971 F.Supp. 547, 553 (N.D.Ga.1996) ("Claims omitted from the EEOC charge may still be litigated when 'reasonably related' to those claims brought in the EEOC charge.").

The reason for this rule is that under the statutory scheme of Title VII, the EEOC is given the first opportunity to investigate the alleged discrimination and attempt to achieve voluntary compliance. *See Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970)."Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action...."*Id.*It is also critical to the process that the employer receive timely notice of the basis of the claims of discrimination. *Manning v. Chevron Chemical Company, LLC,* 332 F.3d 874, 878 (5th Cir.2003) ("One of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.'") (quoting *EEOC v. Shell Oil Co.,* 446 U.S. 54, 77, 104 S.Ct. 1621, 1635, 80 L.Ed.2d 41 (1984)); *see also White v. Wells Fargo Guard Services,* 908 F.Supp. 1570, 1580 (M.D.Ala.1995). Thus, raising a claim at the administrative level is a condition precedent to filing suit on the claim. *See Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 589 n. 8 (11th Cir.1994); *Clark v. City of Macon, Georgia,* 860 F.Supp. 1545, 1551 (M.D.Ga.1994).

***6** In the present case, Plaintiff Atkins contacted an EEO Counselor on August 17, 2006, and alleged that he had been subjected to retaliation and discrimination on the basis of race and sex when he was denied a ROC performance award. [Doc. 2, Ex. 2 at 1-2]. On the EEO Counseling Report completed at this time, Plaintiff checked boxes labeled "Awards" and "Retaliation" in the section of the report which asked the complainant to select the matters causing the complaint. [*Id.*]. Plaintiff, however, did not check either of the boxes labeled "Sexual Harassment" or "Harassment (Non-Sexual) ." [*Id.*]. On September 15, 2006, Plaintiff filed a formal complaint of discrimination. [Doc. 2, Ex. 2 at 4, and Ex. 3 at 1]. A letter from the SSA notifying Plaintiff that his complaint had been accepted stated, in pertinent part: "You claim that based on your sex (male), race (Black) and in retaliation for a prior incident, you were not given a Recognition of Contribution (ROC) award in August 2006. You also claim that management denied you the opportunity to self-nominate for the ROC award."[Doc. 2, Ex. 3 at 1]. In his administrative affidavit dated January 3, 2007, Plaintiff acknowledged that the issues he was complaining about were the denial of a ROC award and the opportunity to self-nominate. [Doc. 2, Ex. 4 at 1]. He also contended that he had "been discriminated over the years by Ms. Stewart" and added, "I would like for this complaint to include my age (over 40) and Ms. Stewart's pattern or practice of discrimination against older Black Males."[Doc. 2, Ex. 4 at 1].

As discussed *supra,*"the scope of a complaint is not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to be extended beyond the scope of the 'EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.' " *Plaisance v. Travelers Insurance Company,* 880 F.Supp. 798, 806 (N.D.Ga.1994) (citation omitted). The court finds that nothing in Plaintiff's administrative allegations would have alerted EEO investigators that Plaintiff was claiming that he had been harassed. There was no investigation into facts relevant to a hostile work environment claim and no such investigation would reasonably be expected to grow out of Plaintiff's EEOC charge. Because Plaintiff's allegations of harassment in his complaint are not reasonably related to his EEO allegations, the court is precluded from considering them. *Waldemar,* 971 F.Supp. at 553.

For all these reasons, the undersigned **RECOMMENDS** that Defendant's motion [Doc. 2] for summary judgment be **GRANTED** on Plaintiff's Title VII claim of sexual harassment or hostile work environment in Count I of his complaint.

**B. Discriminatory Denial of Award**

Plaintiff Atkins alleges that Defendant denied him a Recognition of Contribution ("ROC") award in August 2006 on the basis of his race and sex.[FN2] Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... [or] sex...."42 U.S.C. § 2000e-2(a)(1). In a circumstantial evidence case, such as that herein, the allocation of burdens and order of presentation of proof are as follows: (1) the plaintiff has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence; (2) if the plaintiff proves the *prima facie* case, the court will presume discriminatory intent, and the burden (of production) then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the action taken against the employee; and (3) if the defendant carries this burden, the presumption of discrimination is eliminated, and the plaintiff has an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant was a pretext for discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973); *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 642-643 (11th Cir.1998). A plaintiff can establish a *prima facie* case of race or sex discrimination by proving: (1) that he was within a protected class; (2) that he suffered an adverse employment action; and (3) that a similarly situated employee not within his protected class was treated more favorably. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981).

FN2. Although Plaintiff asserted in his administrative filings that he was subjected to discrimination when he was denied the right to nominate himself for an award, he did not bring this claim in his complaint. [Doc. 1]. Even if he had asserted such a claim, summary judgment would be granted because, as Defendant notes, Plaintiff has offered no evidence that Stewart or anyone else at SSA took any action preventing him from self-nominating. [Doc. 10 at 11-12].

*7 Defendant concedes that Plaintiff is able to establish *prima facie* cases of race and sex discrimination on his claim that he was denied a ROC award. [Doc. 2 at 10]. The burden of production, therefore, shifts to Defendant to proffer a legitimate, non-discriminatory reason for not giving Plaintiff the award. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824;*Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094)."[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."*Id.* (quoting *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096)."[T]he defendant need

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."*Id.* (quoting *Burdine,* 450 U.S. at 254-55, 101 S.Ct. at 1094). The defendant's burden in the rebuttal stage is "exceedingly light." *Walker v. NationsBank of Florida,* 53 F.3d 1548, 1556 (11th Cir.1995); *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983).

Of the four types of performance awards utilized by the SSA, ROC was the most prestigious and carried the highest monetary value. [DSMF ¶ 3]. Brenda Stewart was the employee who made the decisions regarding the ROC awards. Stewart previously gave Plaintiff a ROC award for fiscal year 2004. [DSMF ¶ 8]. However, Stewart stated in her declaration that she did not find anything out of the ordinary or exceptional about Plaintiff's performance during the fiscal 2005 period. [Stewart Dec. ¶ 47]. She stated, "While it may have been appropriate to give Mr. Atkins a lesser award such as a CASA, such a decision would have to be taken by the awards panel because he was a bargaining unit employee."[Stewart Dec. ¶ 48]. Defendant has obviously carried its light burden of producing a legitimate, non-discriminatory reason for not giving Plaintiff a ROC award.

Once a defendant meets its burden of production, "the presumption of discrimination created by the McDonnell Douglas framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.' " *Combs,* 106 F.3d at 1528 (quoting *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094-95 & n. 10). The plaintiff then "has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997) (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825). Plaintiff's proof of pretext merges with his "ultimate burden of showing that the defendant intentionally discriminated against the plaintiff." *Id* . (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)). This task is a highly focused one.

***8** The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.' " *Combs,* 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Ry. Co.,* 37 F.3d 603, 605 (11th Cir.1994)). The court's task is to "evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence.' " *Id.* (quoting *Sheridan v. E.I. DuPont De Nemours & Co.,* 100 F.3d 1061, 1072 (3rd Cir.1996) (en banc), *cert. denied,*521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997)). "[A] plaintiff may not in all cases merely rest on the laurels of [his] *prima facie* case in the face of powerful justification evidence offered by the defendant." *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir.1987). Instead, the plaintiff must address and rebut every reason proffered by the employer.*Chapman v. A.I. Transp.,* 229 F.3d 1012, 1037 (11th Cir.2000) (*en banc* ).

Plaintiff Atkins first contends that he is able to establish pretext by pointing to evidence that Brenda Stewart was biased against males and African-Americans. Plaintiff contends that Stewart called African-American males "lazy," "stupid," "weird," "dummy," "arrogant," and "buffoon." [Pla. Dec. ¶ 6]. Plaintiff cites to the affidavit of an employee named Gloria Maupin who stated that Stewart told her that she "has a field of lilies and can only pick one lily out of her field at a time to promote."[Doc. 10 at 3]. Plaintiff alleges that on two occasions, Stewart did not authorize payment for overtime he had worked. Plaintiff also writes in his declaration,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"Ms. Stewart expressed her dislike towards me and another African American male, Mr. Robert Barnes."[Pla. Dec. ¶ 7]. The court finds Plaintiff's argument on this issue unpersuasive.

Plaintiff's alleged evidence of racial and sexual animus consists almost entirely of vague and conclusory allegations, and Plaintiff provides no context for any of the alleged statements. He alleges that Stewart did not like him and another African-American male employee and that she twice denied Plaintiff payment for overtime. But Plaintiff cannot show that Stewart treated him or any other employee in a disparate manner on the basis of their race or sex. With regard to the derogatory words spoken by Stewart, there is nothing in them which would allow a reasonable factfinder to conclude that Stewart was motivated by racial or sexual animus when she used them. The "field of lilies" statement is the only statement that could be interpreted as relating to any employees' race. However, even this alleged statement does not evidence racially discriminatory animus but appears to be nothing more than a crude statement about the racial make-up of the employees under Stewart's authority.

***9** More importantly, even if Plaintiff were able to show that Stewart was racially or sexually biased, the evidence offered by Plaintiff would not be sufficient to establish pretext. The Eleventh Circuit has held that evidence of discriminatory animus on the part of a decisionmaker does not allow a plaintiff to establish pretext without rebutting each of the reasons proffered by the employer. *Crawford v. City of Fairburn, Georgia,* 482 F.3d 1305, 1309 (11th Cir.2007). The relevant issue in this case, therefore, is whether Plaintiff is able to meet head on and rebut Defendant's proffered legitimate, non-discriminatory reason for not giving Plaintiff a ROC award.

As discussed *supra,* Stewart stated in her declaration that she did not find anything exceptional about Plaintiff's performance during the fiscal 2005 period. [Stewart Dec. ¶ 47]. Plaintiff argues that this is a pretext for discrimination because "[n]owhere do the requirements for an ROC award state that the employee must exhibit 'exemplary' performance as Ms. Stewart has stated."[Doc. 10 at 17-18]. Plaintiff contends that he was only required to have a "successful" rating to qualify for a ROC award and that this is precisely the rating he received. [*Id.*].

Plaintiff's argument is unpersuasive. The ROC award is the highest SSA award and carries the highest potential monetary value. [DSMF ¶ 3; Stewart Dec. ¶ 17]. An employee must have a "successful" rating in order to meet the "basic eligibility requirements for the ROC award."The evidence establishes that Plaintiff met these requirements, and Defendant does not make an argument to the contrary. In fact, Stewart explicitly stated that Plaintiff was considered for a ROC award. [Stewart Dec. ¶ 27]. But Plaintiff seems to be arguing that because he met the basic requirements for the ROC award, he was automatically entitled to the award and the fact that he did not receive the award establishes pretext. This is simply incorrect. Stewart was solely responsible for determining who would receive a ROC award. [DSMF ¶¶ 4, 5]. Stewart stated in her declaration, "When evaluating who to give a ROC to, I look for someone who consistently performs above and beyond their ordinary job duties or who takes on a project of special significance in the Center of Disability."[Stewart Dec. ¶ 37]. While Stewart had "nothing negative to say about Mr. Atkins' performance in fiscal year 2005," she "did not find anything out of the ordinary or exceptional about his performance during that performance period."[Stewart Dec. ¶ 47]. Nothing Plaintiff has pointed to casts doubt on this explanation.

Plaintiff also contends that pretext can be shown by the fact that Stewart stated that Plaintiff was a bargaining unit employee. According to Stewart, she did not have the authority to give Plaintiff an award other than a ROC award because he was a bargaining unit employee. [Stewart Dec. ¶ 48]. Plaintiff, however, alleges that he was a non-bargaining unit

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

employee at all times and that Stewart's statement to the contrary establishes pretext. [Doc. 10 at 18-19]. This is unpersuasive.

***10** Plaintiff's claim has consistently been that he was subjected to discrimination when he was denied a ROC award for fiscal year 2005. [Doc. 2, Exs. 2-4]. But Stewart was solely responsible for allocating ROC awards to both bargaining and non-bargaining unit employees. [DSMF ¶¶ 4, 5]. Thus, whether Plaintiff was a bargaining or non-bargaining unit employee is not relevant to his claim. Moreover, the affidavit of Human Resources Team Leader Joyce Hudson-Jones and the attached personnel forms establish that Plaintiff was, in fact, a bargaining unit employee from October 6, 2002, to February 5, 2006. [Doc. 15, Ex. 9]. Plaintiff's contention is that he was subjected to discrimination when he "did not receive a ROC award for the period of October 1, 2004 through September 30, 2005."[Doc. 2, Ex. 4]. The relevant evidence shows that Plaintiff was a bargaining unit employee during this time, and his pretext argument fails.

It is clear that Plaintiff disagreed with Stewart's assessment of his work performance. However, even if Stewart was mistaken in her assessment, this does not support his pretext argument. As the Eleventh Circuit has noted, "It is obviously not a violation of federal employment discrimination laws for an employer to err in assessing the performance of an employee. Thus, establishing pretext is not merely demonstrating that the employer made a mistake, but that the employer did not give an honest account of its behavior."*Walker,* 53 F.3d at 1564. Plaintiff has failed to offer any evidence showing that Stewart did not honestly believe that Plaintiff's performance did not warrant an ROC award. As a result, Plaintiff cannot establish pretext, and Defendant's proffered reason stands unrebutted. The undersigned, therefore, **RECOMMENDS** that Defendant's summary judgment motion [Doc. 2] be **GRANTED** on Plaintiff's claim that he was denied a ROC award on the basis of his race and sex.

**C. Retaliation Claim**

Plaintiff Atkins' final claim is that he was denied a ROC award in retaliation for engaging in statutorily protected expression. Plaintiff alleges that in the Spring of 2006, he offered to testify on behalf of an employee named Vera Goodridge who had filed an EEOC complaint against Brenda Stewart. [Doc. 1 at 8-9; Doc. 10 at 7]. Plaintiff argues that his being denied a ROC award in August of 2006 was in retaliation for this protected activity. [*Id.*].

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1311 (11th Cir.2002); *Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453, 1454 (11th Cir.1998). The plaintiff " 'need not prove the underlying claim of discrimination which led to [his] protest,' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed."*Holifield,* 115 F.3d at 1566 (citing *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989)). Moreover, "[i]t is important to note that this circuit interprets the causation requirement broadly: 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.' " *Robinson v. AFA Service Corp.,* 870 F.Supp. 1077, 1083 (N.D.Ga.1994) (citing *EEOC v. Reichold Chems., Inc.,* 988 F.2d 1564, 1571 (11th Cir.1993)); *see also Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460 (11th Cir.1998).

***11** The court will assume for summary judgment purposes that Plaintiff engaged in protected expression when he was identified in the Spring of 2006 as a potential witness against Stewart in Goodridge's case.[FN3][Doc. 10, Ex. D]. Plaintiff, therefore, is able to establish the first *prima facie* element. The court finds that Plaintiff also suffered an adverse employment action in August of 2006 when he was denied a ROC award. The issue the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

court must decide is whether a reasonable jury could conclude that Plaintiff's protected expression and the adverse action were causally connected.

FN3. The court notes, however, that there is no evidence that Pace disclosed to Stewart anything about Plaintiff's possible testimony. [Doc. 10, Ex. D].

If an employer takes an adverse employment action against an employee shortly after becoming aware of the employee's protected expression, then the short amount of time between the two events, standing alone, may be enough to produce an inference of retaliation. *See Balletti v. Sun-Sentinel Company,* 909 F.Supp. 1539, 1549 (S.D.Fla.1995) (citing *Balicao v. Univ. of Minnesota,* 737 F.2d 747 (8th Cir.1984)).“The shorter the period between the two events, the stronger the inference that the adverse action was improperly motivated.”*Balletti,* 909 F.Supp. at 1549;*see also Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir.1999) (“The charge was made May 19, 1995 and Farley was fired seven weeks later on July 10, 1995. We find this time frame sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case.”). Conversely, the longer the period between the protected activity and the adverse employment action, the weaker the inference that the adverse action was motivated by retaliation. In *Clark County School District v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001), the Supreme Court stated that “mere temporal proximity between ... knowledge of protected activity and an adverse ... action ... must be ‘very close.’ “

Plaintiff argues that the amount of time between his identification as a possible witness against Stewart in an EEOC hearing and Stewart's denial of a ROC award is short enough to establish a causal link between the two events. The undersigned disagrees. The email cited by Plaintiff shows that Stewart became aware that Plaintiff might be a witness against her in March or April of 2006. [Doc. 10, Ex. D]. Plaintiff was denied a ROC award in August of 2006. [Doc. 2, Ex. 3 at 1]. Thus, more than three months elapsed between the protected expression and the adverse action.

In *Higdon v. Jackson,* 393 F.3d 1211, 1221 (11th Cir.2004), the Eleventh Circuit held that “the three month period between the September 29 letter and the December 31 incident does not allow a reasonable inference of a causal relation between the protected expression and the adverse action.”The *Higdon* court also noted that the Supreme Court in *Breeden,* 532 U.S. at 273, 121 S.Ct. at 1511,“cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection.”*Higdon,* 393 F.3d at 1220. More than three months passed between Plaintiff Atkins' protected expression and the adverse action, and the court finds this insufficient to show a causal connection. Because Plaintiff has offered no other evidence of a causal link or a retaliatory motive on the part of Stewart, Plaintiff cannot establish a *prima facie* case of retaliation. The undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 2] be **GRANTED** on Plaintiff's Title VII retaliation claim.

***12** Even assuming *arguendo* that Plaintiff were able to establish a *prima facie* case of retaliation, summary judgment would still be warranted. As discussed *supra,* Defendant has proffered a legitimate, non-discriminatory reason for not giving Plaintiff a ROC award, and Plaintiff is unable to show that this reason is pretextual. Brenda Stewart was the employee who made the decision regarding the ROC awards, and she has stated that she did not find anything out of the ordinary or exceptional about Plaintiff's performance during the relevant time period. [Stewart Dec. ¶ 47]. Because Plaintiff has offered no evidence which casts doubt on Stewart's contention that she honestly believed that Plaintiff's performance did not warrant an ROC award, Defendant's proffered reason stands unrebutted, and pretext cannot be established.

## IV. Conclusion

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 12 of 12



For all the foregoing reasons and cited authority, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 2] be **GRANTED** on all of Plaintiff Atkins' claims.

N.D.Ga.,2007.
Atkins v. Astrue
Slip Copy, 2007 WL 4373598 (N.D.Ga.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.