**H**
Jeffers v. Chao
D.D.C.,2004.
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Dwayne JEFFERS, Plaintiff,
v.
Elaine L. CHAO, Chairman, Pension Benefits Guaranty Corp.,
andSteven KANDARIAN, Executive Director, Pension Benefits Guaranty Corp., Defendants.
**No. Civ.A. 03-1762(RMC).**

Sept. 21, 2004.

*MEMORANDUM OPINION ON MOTION TO DISMISS*

COLLYER, J.
*1 Dwayne Jeffers is an actuary in the Insurance Operations Department of the Pension Benefits Guaranty Corporation ("PBGC"), an agency within the U.S. Department of Labor ("DOL"). He filed a lawsuit against Elaine L. Chao, PBGC Chairman and Secretary of Labor, and Steven Kandarian, PBGC Executive Director, in their official capacities, for alleged gender and race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000*et seq.* At the heart of his suit are alleged acts of agency discrimination that were initially the subject of three Equal Employment Opportunity ("EEO") complaints.

The PBGC has moved to dismiss Mr. Jeffers's suit arguing that, because Mr. Jeffers refused to cooperate during the agency investigations of his complaints, he has failed to exhaust administrative remedies and is, thereby, precluded from seeking redress in this Court. Mr. Jeffers opposes the government's motion, yet is unabashed about his failure to participate in the agency investigations of his EEO complaints. He argues that there is no legal obligation for a plaintiff to "enthusiastically participate[ ] in the administrative process."Opposition to Motion to Dismiss at 1. Even if true, his argument misses its mark. He did not simply fail to participate enthusiastically; he failed to participate at all.

For the reasons stated, the PBGC's motion to dismiss will be granted in part and denied in part.

BACKGROUND FACTS

Mr. Jeffers is an African American male who is a GS-1510-13 Actuary with the PBGC. Compl. ¶ 6. He has been employed by the PBGC since August 1995. *Id.* ¶ 8. Since January 2002, he has also been a union shop steward on behalf of the PBGC employees who are members of the National Association of Government Employees Local R377 ("Union").*Id.* ¶¶ 6, 9. He "filed three administrative EEO complaints on his own behalf all involving claims of race and sex discrimination and retaliation for having engaged in protected EEO activity and all concerning denial of promotions."*Id.* ¶ 9.

A. *EEO Complaint No. 99-06*

On September 28, 1999, Mr. Jeffers filed his first formal EEO complaint of discrimination ("EEO Complaint No. 99-06").*See* Declaration of Acting EEO Manager Noisette Smith ¶ 3 ("Smith Declaration"). In this first administrative complaint, Mr. Jeffers alleged discriminatory non-selection for several positions and retaliation for unspecified EEO activities. *Id.*; Compl. ¶¶ 6, 12. Raymond Desmone, an independent contractor, was assigned to investigate Mr. Jeffers's non-selection allegations. Smith Declaration ¶ 3. Donald Mirsch, also an independent contractor, was assigned to investigate Mr. Jeffers's retaliation allegations. *Id.* ¶ 4.[FN1]

FN1. Ms. Smith states that all formal complaints of discrimination are assigned to an

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PENGAD-Bayonne, N.J. GOVERNMENT EXHIBIT 5

independent contract investigator. Smith Declaration ¶ 2.

Attachments "A" and "B" to the Smith Declaration chronicle numerous unreturned calls, unclaimed certified letters, and missed interview dates during the agency's attempt to investigate Mr. Jeffers's first EEO complaint. Mr. Jeffers does not contest these facts.

1. *Desmone Investigation*

*2 On February 21, 2000, Mr. Desmone attempted to schedule an appointment to obtain a statement from Mr. Jeffers in support of EEO Complaint No. 99-06. Mr. Jeffers stated that he was unable to set a date at that time, but promised to contact the investigator on February 24, 2000 to make such arrangements. He never did. Mr. Desmone telephoned Mr. Jeffers again on February 29, 2000, and left a voice mail message. Mr. Jeffers returned that call and left a voice mail message saying that he could not meet that week, but would contact Mr. Desmone about meeting the next week. Mr. Jeffers failed to follow-up on his voice mail message, and did not respond to a call from Mr. Desmone on March 9, 2000. Mr. Desmone tried yet again on March 14, 2004. This time he succeeded in scheduling an appointment to take Mr. Jeffers's statement at 10:30 a.m. on March 22, 2000.

At 8:30 a.m. on March 22, 2000, Mr. Desmone called Mr. Jeffers to remind him of his 10:30 a.m. appointment. Mr. Jeffers's voice mail indicated that he was out of the office and would not return until March 23, 2000. His office confirmed that Mr. Jeffers was working at home that day. Mr. Desmone left a voice message, followed up by a letter, asking Mr. Jeffers to call to reschedule their appointment. When there was no response, Mr. Desmone sent the same letter by certified mail. This second letter was returned on April 25, 2000, marked "Unclaimed" after two attempts at delivery. Mr. Desmone also sent a certified letter containing summaries of managers' statements. This letter was returned with the mark "Refused" on April 21, 2000.[FN2]

FN2. The letters were all clearly marked as coming from Raymond A. Desmone.

2. *Mirsch Investigation*

Mr. Mirsch fared no better in his efforts to investigate Mr. Jeffers's retaliation claims.[FN3] The investigator spoke with Mr. Jeffers on July 3, 2000, and immediately sent a letter confirming his intention to meet with Mr. Jeffers no later than July 11, 2000. *See* Smith Declaration, Attach. B. Despite numerous calls to, and messages left at, Mr. Jeffers's home and office, Mr. Jeffers never set a time to meet with Mr. Mirsch. On July 13, 2000, Mr. Mirsch sent a letter to Mr. Jeffers that enclosed a draft "affidavit" with ten questions and the request that Mr. Jeffers provide his answers in writing in lieu of an interview. This July 13, 2000 letter was sent by regular mail and also by certified mail, return receipt requested. The letter also noted EEOC Regulation 29 C.F.R. § 1614.107(a)(7), which provides that an agency may dismiss an EEO complaint if the employee fails to provide information in response to a written request. Smith Declaration, Attach. B. The investigator received no response; the copy sent by certified mail was returned "Unclaimed."

FN3. The issue for investigation was:

> Whether, in retaliation for having engaged in protected civil rights activity, [Mr. Jeffers was] discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, when [he was] allegedly threatened with retaliation, and allegedly subjected to tactics of coercion, undue influence, harassment, and humiliation in the processing of your complaint of discrimination.
>
> *See* Smith Declaration, Attach. B, Exh. 8.

Despite Mr. Jeffers's refusal to cooperate, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

agency reached a final decision on EEO Complaint No. 99-06. *See* Reply in Support of Motion to Dismiss at 3.

B. *EEO Complaint Nos. 02-09 and 03-03*

On June 12, 2002, almost three years after his first complaint, Mr. Jeffers filed a second formal complaint of discrimination and reprisal ("EEO Complaint No. 02-09"). Smith Declaration ¶ 5. EEO Complaint No. 02-09, involving non-selection for three positions, was assigned to independent contractor John Raymos. Mr. Jeffers filed a third formal complaint of discrimination ("EEO Complaint No. 03-03") in December 2002 concerning his Fiscal Year 2000 performance evaluation and non-selection for several positions. This complaint was also assigned to Mr. Raymos for investigation. Smith Declaration ¶ 6.

*3 Mr. Raymos had no better luck than the prior investigators in obtaining information from Mr. Jeffers. Attachments "C" and "D" to the Smith Declaration contain copies of a series of e-mail messages among Mr. Raymos, Robert Perry (Mr. Jeffers's representative), and Mr. Jeffers that document the attempt to gather information in the agency investigations.

Mr. Raymos first attempted to contact Mr. Jeffers on April 7, 2003 through a call to Mr. Perry. After numerous attempts to arrange an interview with Mr. Jeffers by telephone, Mr. Raymos began to correspond via e-mail. On April 21, 2003, Mr. Perry responded that he would call to arrange an interview by the end of the week. But, before an interview could be arranged, Mr. Jeffers inserted himself into the e-mail correspondence, scolding Mr. Raymos: "Reading is Fundamental (RIF). Robert [Perry's] 4/21/2003 e-mail below specifically requests that you include me on all communications! Yet you refuse to do that."Smith Declaration, Attach. C at 8. Despite an apology from Mr. Raymos, the vitriol in Mr. Jeffers's e-mails continued. Ultimately, Mr. Jeffers suggested that he would be available with his representative "on Thursday and Friday." *Id.* Despite the investigator's prompt agreement to meet as suggested, Mr. Jeffers quickly withdrew his suggestion, stating "[y]ou might as well cancel that meeting because we have problems. I must be assured prior to scheduling a meeting with you that you will conduct a thorough and proper investigation, without any misconduct."*Id.* at 6.[FN4] Mr. Raymos informed Mr. Jeffers and Mr. Perry that he would keep the suggested May 1, 2003 appointment, but neither man showed up.

FN4. According to Mr. Jeffers, a prior investigator who had taped an interview with him stated that Mr. Jeffers could have "the original tape." Smith Declaration, Att. C at 6. Mr. Raymos subsequently advised Mr. Jeffers that such interview tapes were the property of McCauley & Associates, Mr. Raymos's employer, and would not be released. Based upon this dispute, Mr. Jeffers concluded that the "company is enga[g]ing in improper conduct. The taped [sic] recording of my interview has been done under false pretenses."*Id.*

Mr. Raymos made one final attempt to schedule an interview. On August 6, 2003, he sent an e-mail stating that he "would still appreciate the opportunity to interview Mr. Jeffers prior to completing" his report of the investigation but that, if no response were received by August 13, 2003, he would complete the report and note that he "was unable to obtain Mr. Jeffers's cooperation in meeting with him."*Id.* at 11.On August 12, 2003, Mr. Jeffers responded by referring Mr. Raymos to his attorney. Mr. Raymos was unable to complete his investigation of either EEO Complaint No. 02-09 or EEO Complaint No. 03-03 prior to the filing of this lawsuit. Consequently, there has been no final agency decision on either complaint. *See* Smith Supp. Decl. ¶¶ 2-3.

Mr. Jeffers filed suit on August 19, 2003 based upon the same alleged acts of discrimination that were the subject of these EEO complaints. Compl.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

¶¶ 9-10.The issue facing the Court on this motion to dismiss is: under what circumstances, if any, may a federal employee completely fail to participate in the investigation of his own EEO complaints and still bring a lawsuit under Title VII?

LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Day v. District of Columbia Dep't of Consumer and Regulatory Affairs,* 191 F.Supp. 154, 157 (D.D.C.2002). A court may dismiss if it lacks the statutory or constitutional authority to hear a case. *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (1996).[FN5] In reviewing such a motion, a court is not limited to the allegations contained in the complaint, *Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,*482 U.S. 64 (1987), and may properly consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Sciences.,* 974 F.2d 192, 197 (D.C.Cir.1992).*See also*5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (2d ed.1991) (affidavits and other subject matter may be used in assessing a challenge to jurisdiction).*See, e.g., Artis v. Greenspan,* 223 F.Supp.2d 149, 152 (D.D.C.2002) (stating that "[a] court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of ... subject-matter jurisdiction").[FN6] Further, a Rule 12(b)(1) motion is appropriate for resolving cases in which the plaintiff has failed to exhaust administrative remedies. 5A WRIGHT & MILLER,*supra,* § 1350.

FN5. PBGC's motion to dismiss is also brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because PBGC did not brief its Rule 12(b)(6) motion in a meaningful way, this Court examines it primarily as a motion to dismiss under Rule 12(b)(1).

FN6. The facts are taken from the complaint or from the affidavit supporting the PBGC's motion to dismiss. The plaintiff does not challenge any of the facts.

ANALYSIS

*4 Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000*et seq.,*"proscribes federal employment discrimination and establishes an administrative and judicial enforcement system" for resolving claims of discrimination.*Brown v. Gen. Serv. Admin.,* 425 U.S. 820, 829 (1976). Section 2000e-16(c) allows an employee of the federal government to file a civil suit based upon alleged discriminatory practices. 42 U.S.C. § 2000e-16(c).[FN7] However, the statutory scheme contemplates that a complainant initially seek redress through the agency itself.[FN8]Indeed, it is well-settled that federal employees must, absent equitable considerations, exhaust their administrative remedies prior to bringing suit under Title VII. *Bayer v. Dept. of Treasury,* 956 F.2d 330, 332 (D.C.Cir.1992) ("Prior to instituting a court action under Title VII, a plaintiff alleging discrimination in federal employment must proceed before the agency charged with discrimination."); *Williamson v. Shalala,* 992 F.Supp. 454, 457 (D.D.C.1998) ("A plaintiff who wishes to institute a civil action ... under Title VII ... must first exhaust administrative remedies."). Failure to do so deprives a district court of subject-matter jurisdiction, *see Artis v. Greenspan,* 158 F.3d 1301, 1303 (D.C.Cir.1998),[FN9] and may bar a plaintiff from litigating his claims in court. *See Brown v. Marsh,* 777 F.2d 8, 13 (D.C.Cir.1985).

FN7. Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, reli-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

gion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 U.S.C. § 2000e-16(c).

FN8. The exhaustion requirement "serves the important purpose of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision."*Park v. Howard University,* 71 F.3d 904, 907 (D.C.Cir.1995).

FN9.*But see Rann,* 346 F.3d at 195 (noting that the exhaustion requirement may be viewed as an equitable defense and not as jurisdictional in nature).

The Code of Federal Regulations provides administrative requirements for the prosecution of Title VII complaints in agency proceedings. Under 29 C.F.R. § 1614, a federal employee with a discrimination complaint must, among other things: 1) "consult a Counselor prior to filing a complaint in order to try to informally resolve the matter,"29 C.F.R. § 1614.105(a); 2) file a complaint "with the agency that allegedly discriminated against the complainant,"29 C.F.R. § 1614.106(a); and 3) "produce such documentary and testimonial evidence as the [independent and impartial] investigator deems necessary."29 C.F.R. § 1614.108(c)(1). These regulations explicitly require an aggrieved party to participate in the investigation of a complaint. A failure to do so allows the agency to draw an adverse inference or dismiss a complaint. *See, e.g.,*29 C.F.R. § 108(c)(3) (permitting the investigator to note in the investigative record that an adverse inference be made, or other appropriate action be taken, if a complainant fails to respond to requests for information); 29 C.F.R. § 1614.107(a)(7) (allowing dismissal for failure to respond to a request for information).

Whether a plaintiff has observed the administrative requirements of Title VII and exhausted administrative remedies can be a close question. It is not so here. Beyond filing his EEO complaints, Mr. Jeffers did not aid in the investigation of his complaints, nor did he otherwise participate in the administrative process. He repeatedly failed to return phone calls from investigators, refused certified letters, and absented himself from interviews. Indeed, Mr. Jeffers does not contest in any cogent fashion the PBGC's claim that he "merely completed forms and [did] little else to participate in the process."Memorandum in Support of Motion to Dismiss at 1. Instead, Mr. Jeffers relies on conclusory statements that he "followed all protocols legally required of him" and "does not have to participate in the manner that pleases the defendant."Opposition to Motion to Dismiss at 4.

***5** It is evident that Congress intended to regulate the timing and forum for adjudication of Title VII claims. *Brown,* 425 U.S. at 833 (examining legislative history and the statutory framework and concluding that a careful blend of administrative and judicial enforcement powers was intended). Implicit in the Title VII framework is the requirement that aggrieved parties pursue administrative remedies in more than a *de minimus* fashion. Mr. Jeffers did not do so. Allowing Mr. Jeffers to proceed without exhausting his administrative options would render meaningless the administrative component of this framework; the Court will dismiss

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

his claims based upon the second and third EEO complaints (Nos. 02-09 and 03-03).*See Wren v. Dep't of Veterans Affairs,* 918 F.2d 1073, 1978 (2d Cir.1990) (comparing Title VII to the ADEA and finding that allowing a civil suit after abandonment of administrative claims would be contrary to the intent and function of the statutory scheme); *Bush v. Engleman,* 266 F.Supp.2d 97, 101 (D.D.C.2003) (a plaintiff who abandons the administrative process fails to satisfy the exhaustion requirement).

Mr. Jeffers argues that "[a]ssuming *arguendo* that Mr. Jeffers failed to exhaust his administrative remedies on his retaliation claim, that claim should not be dismissed as exhaustion on retaliation claims is not required."Opposition to Motion to Dismiss at 3. Mr. Jeffers states this exception to the exhaustion requirement too broadly. Under certain conditions, courts have determined that a plaintiff is not required to exhaust administrative remedies with respect to claims of retaliation. *See Marshall v. James,* 276 F.Supp. 41, 54 (D.D.C.2003). These courts have recognized that requiring a plaintiff to file a subsequent administrative complaint alleging retaliation for a prior EEO complaint would erect a needless procedural barrier, and would not be in line with the policy objectives of Title VII to discourage discrimination. *See Gupta v. East Texas State Univ.,* 654 F.2d 411, 414 (5th Cir.1981). Further, there are practical reasons for not requiring exhaustion in certain types of retaliation cases. Beyond the possible futility of refiling administrative complaints against an allegedly-offending agency, a plaintiff will "naturally be gun shy about inviting further retaliation" by filing a subsequent administrative complaint based on retaliation. *Brown v. Hartshorne Pub. Sch. Dist. No. 1,* 864 F.2d 680 682 (10th Cir.1988).

But the "procedural requirements governing plaintiff's right to bring a Title VII claim in court are not unimportant."*Velikonja v. Mueller,* 315 F.Supp.2d 66, 71 (2004).*See Brown,* 777 F.2d at 14 ("Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible to ensure that the federal courts are burdened only when reasonably necessary."). Indeed, the Supreme Court has recently indicated that the Title VII exhaustion requirement applies to claims of retaliation. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114-15 (2002); *Velikonja,* 315 F.Supp.2d at 71. Accordingly, courts have tailored the retaliation exception to situations that are both aligned with the reasons for requiring exhaustion and consistent with the overall policy objectives of Title VII. *See, e.g., McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473 (7th Cir.1996) (finding the exception inapplicable to alleged acts that occurred prior to the administrative complaint); *Payne v. District of Columbia,* 298 F.Supp.2d 7, 13 (D.D.C.2002) (same). Such tailoring is appropriate here.

*6 The mere allegation of retaliation is not a panacea, allowing plaintiffs to circumvent the statutory framework of Title VII, which requires diligent prosecution of administrative claims before suit. In this case, Mr. Jeffers filed three administrative complaints, at distant times, regarding claims of non-selection or denial of promotion, and all involving claims of race and sex discrimination and retaliation for having engaged in protected EEO activity. In each complaint, he made separate and distinct allegations of non-selection. These allegations included only vague assertions that, in addition to being refused placement due to agency discrimination, Mr. Jeffers was not selected due to retaliation. These allegations of retaliation should have been pursued in the administrative proceedings, but were not. *See Coleman-Adebayo v. Leavitt,* 326 F.Supp.2d 132, 138 (D.D.C.2004) ("Individual acts of retaliation that form the basis of retaliation claims are also included within the Supreme Court's list of discrete discriminatory acts [in *Morgan* ] and therefore any claim stemming from those acts must be administratively exhausted."). In fact, Mr. Jeffers makes no attempt to explain why he filed administrative complaints and yet refused to otherwise pursue his administrative remedies. Under these circumstances, allowing Mr.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Jeffers to proceed with his retaliation claims in this lawsuit would sanction spurious avoidance of the administrative process. Such a result would be contrary to the policies that initially gave rise to the retaliation exception, and would work an injury upon the policy objectives underlying the requirement of administrative exhaustion.

Despite Mr. Jeffers's obdurate refusal to cooperate in any way, dismissal of his first complaint is not warranted. The PBGC conducted a one-sided investigation and took final agency action on Complaint No. 99-06.[FN10]Under EEOC guidelines, an agency cannot dismiss a complaint, despite a complainant's failure to respond to requests for information or otherwise to cooperate, when "the record includes sufficient information to issue a decision."EEOC Management Directive 110, Chapter 5(IV)(B)(2).*See also*29 C.F.R. § 1614.107(a)(7) (dismissal appropriate if the complainant failed to respond to a request for information, but complaint may be adjudicated if sufficient information for that purpose is available). The agency issued such a decision despite Mr. Jeffers's lack of cooperation, presumably because it had sufficient information to issue a decision. The D.C. Circuit has held that "[w]here the agency has taken final action based on an evaluation of the merits, it cannot later contend that the complainant failed to exhaust his administrative remedies."*Wilson v. Pena,* 79 F.3d 154, 165 (D.C.Cir.1996).[FN11]*Accord Bowden v. United States,* 106 F.3d 433, 438 (D.C.Cir.1997) (if an agency investigates a complaint and decides it on the merits, untimeliness may be waived).

FN10. The Code of Federal Regulations provides that "[w]hen the complainant ... fail[s] without good cause to respond fully," an agency is permitted to draw an adverse inference that the missing information would be contrary to the complainant's allegations. 29 C .F.R. § 1614.108(c)(3).29 C.F.R. § 1614.110 provides the conditions for final action by agencies.

FN11. Mr. Jeffers relies upon *Wilson* for this same proposition. Opposition to Motion to Dismiss at 2-3. But *Wilson* stands for much more than Mr. Jeffers admits. Importantly, the reasoning in *Wilson* also supports dismissal of claims associated with his second and third EEO complaints.

> If a complainant forces an agency to dismiss or cancel the complaint by failing to provide sufficient information to enable the agency to investigate the claim, he may not file a judicial suit. Even though the dismissal is a "final action," which would normally trigger the right to sue under § 717(c), the suit will be barred for failure to exhaust administrative remedies.

*Wilson,* 79 F.3d at 164.

*7 The PBGC attempts to distinguish *Wilson* and argues for a different rule. The agency argues that Mr. Jeffers should be deemed to have failed to exhaust his administrative remedies because he completely spurned his obligation to cooperate in the investigation of his first EEO complaint. Reply in Support of Motion to Dismiss at 3-4. The agency's argument has some appeal. The proscriptions of Title VII apply to the federal government with certain conditions. One such condition is a timely-filed complaint, subject to the normal rules of equity. *See Koch v. Donaldson,* 260 F.Supp.2d 86, 89 (D.D.C.2003) (failure to timely file constitutes a failure to exhaust remedies and is a ground for dismissal by the agency); *Smith v. O'Neill,* 277 F.Supp.2d 12, 18-19 (D.D.C.2003) (failure to comply with filing requirements may be subject to equitable principles). A second condition is an administrative investigation, with mandatory participation by the allegedly-injured employee. *See Barnes v. Levitt,* 118 F.3d 404, 409 (5th Cir.1997) (district court lacked jurisdiction in employment discrimination suit where plaintiff failed to participate in agency investigation). Assuming that this condition is also subject to equitable considerations, not argued here, the mandatory nature of an

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

employee's participation in the investigation of his EEO complaint could be undercut by later court acceptance of a lawsuit when he has, without reason, failed to cooperate.[FN12]The agency that takes its EEO principles seriously and investigates all EEO complaints as fully as possible, even without employee cooperation, may be at a financial and evidentiary disadvantage if courts permit suits to proceed under such circumstances.

FN12. Mr. Jeffers makes no equitable argument to excuse his complete refusal to participate in any way in the investigators' efforts to determine the validity of his complaint.

Despite the merits of this argument, *Wilson* gives clear guidance to the district courts of this circuit. An agency that gathers sufficient information to reach a final decision cannot later argue that a lawsuit is barred because an employee failed to cooperate during the investigation. *See Wilson,* 79 F.3d at 164-165. Although some disadvantage may accrue to the agency, this guidance is consistent with the primary policy concern that permeates the law of Title VII: the eradication of employment discrimination. *See*29 C.F.R. § 1614.101 (stating the government's policy objective to provide equal opportunity in employment); *President v. Vance,* 627 F.2d 353, 362 (D.C.Cir.1980) (although Congress intended to give the agency the opportunity to resolve matters internally, it did not intend to establish a procedural roadblock to access to courts); *Marsh,* 777 F.2d at 13 (same). Therefore, the motion to dismiss as to EEO Complaint No. 99-06 will be denied.

The PBGC's motion to dismiss will be granted in part and denied in part. The complaint allegations arising from EEO Complaints Nos. 02-09 and 03-03 will be dismissed for failure of Mr. Jeffers to exhaust his administrative remedies. The motion to dismiss complaint allegations arising from EEO Complaint No. 99-06 will be denied.

***8** A separate order accompanies this memorandum opinion.

D.D.C.,2004.
Jeffers v. Chao
Not Reported in F.Supp.2d, 2004 WL 3257069 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.