H

Scott v. Waste Management of Arkansas South
E.D.Ark.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. Arkansas,Pine Bluff Division.
Ronald SCOTT, Plaintiff
v.
WASTE MANAGEMENT OF ARKANSAS SOUTH, Defendant.
**No. 5:05CV00059-WRW.**

Aug. 30, 2006.

Jesse L. Kearney, Cross, Kearney & McKissic, Pine Bluff, AR, for Plaintiff.
E.B. Chiles, IV, Kristine Gerhard Baker, David A. Curran, Quattlebaum, Grooms, Tull & Burrow PLLC, Little Rock, AR, for Defendant.

***ORDER***

WM. R. WILSON, JR., District Judge.
*1 This is an action for declaratory, injunctive, and monetary relief brought by Plaintiff against his former employer, Waste Management, and his union, American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME" or "the Union"). Plaintiff argues that he was subjected to racial discrimination and retaliation in violation of Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Arkansas Civil Rights Act ("ACRA"),[FN1] and the Equal Protection Clause of the U.S. Constitution. By Order [FN2] entered May 16, 2006, AFSCME was dismissed. Pending is Defendant Waste Management's Motion for Summary Judgment.[FN3]Plaintiff has responded.[FN4]The Motion is GRANTED.

FN1.Ark.Code Ann. § 16-123-101, *et seq.*

FN2. Doc. No. 41.

FN3. Doc. No. 47.

FN4. Doc. Nos. 57-58.

**I. Background**

Plaintiff, an African American, began his employment with Waste Management as a driver on June 6, 2003, and became a full-time residential rear-load driver on July 21, 2003.[FN5]During the six weeks that Plaintiff was considered a "driver in training," his pay was administered by CPST, Inc., a temporary employment services firm.[FN6]

FN5. Doc. No. 47, Ex. 1.

FN6. Doc. No. 47, 1.

George Whale, an African American, was the Site Manager and Plaintiff's boss.[FN7] Mr. Whale noted several incidents of insubordination during Plaintiff's employment, including: (1) in August or September 2003, Plaintiff was disrespectful to Mr. Whale and Cathy Dardenne, the dispatcher, when he yelled at them after learning that his car had been vandalized while he was working; [FN8] (2) in March 2004, Plaintiff threw his clipboard across the room and shouted at one of his co-workers; [FN9] (3) and also in March 2004, Plaintiff refused a direct order to return to a customer's residence to pick up leaf bags.[FN10]Plaintiff was represented at the discharge meeting by his union representatives.[FN11]

FN7. Doc. No. 47, Ex. 2.

FN8. Doc. No. 47, Exs. 2 and 4 (Plaintiff blamed Ms. Dardenne for the incident and loudly demanded that Mr. Whale "do something about that woman.").

FN9. Doc. No. 47, Ex. 5.

FN10. Doc. No. 47, Exs. 2, 4, and 5 (After receiving a complaint from a customer, Mr. Whale instructed Plaintiff over the radio to return to the customer's residence and retrieve the remaining leaf bags.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PENGAD-Bayonne, N. J.
GOVERNMENT EXHIBIT
6

Plaintiff initially refused and stated that if he went back there, then "whatever happens happens" and that "he would have to be a man.").

FN11. Doc. No. 33; Plaintiff admits that at the time he worked for Defendant Waste Management, all the local union representatives were African American.

Despite Plaintiff's discipline problems, Mr. Whale offered Plaintiff the heavy-items position in May 2004.[FN12]The position would have required Plaintiff to obtain more training, but it paid more than Plaintiff's rear-load driver position; therefore, it was considered a promotion. Angrily, Plaintiff immediately refused the position and walked out on Mr. Whale.[FN13]Another employee, Mr. Rudolph Morgan, witnessed the incident.[FN14]In August 2005, Mr. Whale hired an African American to fill the heavy-items position.[FN15]

FN12. Doc. No. 47, Exs. 2 and 5.

FN13. Doc. No. 47, Ex. 2.

FN14. Doc. No. 47, Ex. 5.

FN15. Doc. No. 47, Ex. 2.

In June 2004, Plaintiff asked Ms. Brenda Law, the office manager, to look into what he believed were errors in his pay rates. Plaintiff had a heated discussion with Ms. Law when she could not solve the matter to his satisfaction.[FN16]On June 11, 2004, Ms. Law, spoke with Mr. Whale about the incident. While they were speaking, Plaintiff arrived and angrily exclaimed "You need to get that woman to do her job!"[FN17]Plaintiff explained that his check was wrong and blamed Ms. Law for the oversight. In an attempt to solve the problem, Mr. Whale had Plaintiff turn in his paperwork and explain how he believed that he had been short-changed.

FN16. Doc. No. 47, Ex. 1.

FN17. Doc. No. 47, Exs. 1-2.

On June 15, 2004, Plaintiff called Defendant's Integrity Help Line to formally complain about his compensation issues.[FN18]In his complaint, Plaintiff alleged that he had not been paid for at least 50 hours of work.[FN19]On June 23, 3004, Plaintiff was terminated by Mr. Whale for "continued incidents of insubordination and disrespect" in violation of Waste Management employee conduct rules.[FN20]Due to the proximity of the call, Plaintiff believes he was terminated for contacting the Integrity Help Line.

FN18. Doc. No. 47, Ex. 2B.

FN19. Doc. No. 47, Ex. 2B.

FN20. Doc. No. 47, Exs. 2 and 2B.

*2 Plaintiff asserts that he contacted the EEOC by phone on July 6, 2004, to initiate a charge of discrimination.[FN21]Plaintiff's counsel assisted him in completing the EEOC Charge Information Form filed on September 13, 2004.[FN22] On November 18, 2004, during an interview with Plaintiff, the EEOC investigator prepared and had Plaintiff sign the document title "Charge of Discrimination." FN23Plaintiff did not allege retaliation in his Charge of Discrimination. A Dismissal and Notice of Rights Form was mailed to Plaintiff on November 24, 2004.[FN24]

FN21. Doc. No. 34.

FN22.*Id,* Ex. 1B.

FN23.*Id.*

FN24.*Id.* at 18.

**II. Standard of Review**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[FN25] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN25.*Holloway v. Lockhart,* 813 F.2d 874 (8th Cir.1987); Fed R. Civ. P. 56. 4

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[FN26]

FN26.*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[FN27]Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[FN28]I must view the facts in the light most favorable to the party opposing the motion.[FN29]The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

FN27.*Inland Oil & Transport Co. v. United States,* 600 F.2d 725, 727 (8th Cir.1979).

FN28.*Id.* at 728.

FN29.*Id.* at 727-28.

[T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.,*"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[FN30]

FN30.*Counts v. MK-Ferguson Co.,* 862 F.2d 1338, 1339 (8th Cir.1988)*(quoting City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273-74 (8th Cir.1988) (citations omitted)).

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[FN31]

FN31.*Anderson,* 477 U.S. at 248.

**II. Analysis**

**A. Jurisdictional Issues**

Defendant first argues that Plaintiff's claims of failure to promote, discriminatory discipline, discrimination in job assignments, hostile work environment and retaliation,[FN32] should be dismissed due to his failure to raise them in his EEOC Charge of Discrimination. Plaintiff's EEOC Charge of Discrimination only mentions two instances of alleged race discrimination: (1) Plaintiff's termination, and (2) Defendant's failure to adequately compensate Plaintiff for driving different routes.[FN33]

FN32. Doc. No. 1.

FN33. Doc. No. 47, Ex. 6.

*3 In a separate motion for summary judgment, the same allegations made against Plaintiff's union, AFSCME, were dismissed due to his failure to name AFSME on the Charge of Discrimination-even though Plaintiff named the Union in the Intake Questionnaire. For the same reason, Plaintiff's allegations which were not raised in the Charge of Discrimination must be dismissed.

The Eighth Circuit has held that an intake questionnaire neither signed under oath nor verified does not constitute a valid charge under Title VII.[FN34]Title 42 U.S.C. § 2000e-5(b) requires that all administrative charges be "in writing under oath

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

or affirmation ."Only when an Intake Questionnaire is signed under oath can it "constitute a valid charge under Title VII for purposes of the statute of limitations."[FN35]A Title VII lawsuit does not have to mirror the administrative charge. However, any subsequent judicial complaint can only encompass the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination.[FN36]"Allegations outside of the scope of the EEOC charge ... circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed."[FN37]

FN34.*Shempert v. Harwick Chem. Corp.,* 151 F.3d 793, 796 (8th Cir.1998); *see also Lawrence v. Cooper Communities, Inc.,* 132 F.3d 447, 450 (8th Cir.1998); *Schlueter v. Anheuser-Busch, Inc.,* 132 F.3d 455, 458 (8th Cir.1998).

FN35.*Lawrence,* 132 F.3d at 450.

FN36.*See Duncan v. Delta Consol. Industries, Inc.,* 371 F.3d 1020, 1025 (8th Cir.2004).

FN37.*Id.*

In this case, Plaintiff, with the help of private counsel, alleged failure to promote, discriminatory discipline, discrimination in job assignments, hostile work environment and retaliation in the Intake Questionnaire. However, Plaintiff's formal Charge of Discrimination was much more limited. It states:

I was hired on June 6, 2003, as a Driver. During the months of April and May 2004, I was required to perform the job duties of the Residential Rearload Driver (RRD). I was not paid at the higher RRD rate. On several occasions during the months of April and May 2004, I reported that my pay was not correct. Because my pay was not correct, I refused to accept my payroll checks. My employment was terminated on June 23, 2004.[FN38]

FN38. Doc. No. 47, Ex. 6.

Plaintiff cannot properly bring claims in a lawsuit that were not included in his EEOC charge.[FN39]Likewise, in *Novitsky v. American Consulting Engineers,* the Seventh Circuit held that an EEOC charge rather than intake questionnaire controls scope of charge.[FN40]

FN39.*See generally Cottrill v. MFA, Inc.,* 443 F.3d 629 (8th Cir .2006); *Markose v. Illinois Dept. of Human Services,* 2005 WL 233813 (N.D.Ill.2005); *Cheek v. W. and S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994)*(citing Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47 (1974)).

FN40.*Novitsky v. American Consulting Engineers,* 196 F.3d 699, 702 (7th Cir.1999).

If the charge did not accurately reflect Plaintiff's allegations or intentions in initiating the EEOC proceedings, Plaintiff should have amended the Charge to cure technical defects.[FN41]Plaintiff did not amend his charge; therefore, the preliminary procedural requirements necessary to raise a Title VII claim have not been met. For these reasons, Plaintiff's Title VII claims will be limited to those raised in the Charge of Discrimination.

FN41.*Lawrence v. Cooper Communities, Inc.,* 132 F.3d 447, 450 (8th Cir.1998); 29 C.F.R. § 1601.12(b) (1997).

**B. Discrimination**

Plaintiff asserts that he suffered race discrimination in violation of Title VII, § 1981, § 1983 and ACRA. The burdens of proof for claims brought under Title VII, § 1981, and § 1983 are identical.FN42Likewise, claims under ACRA receive the same analysis as Title VII claims.[FN43] Therefore, I will consider the Title VII claims as including the § 1981, § 1983, and ACRA claims.

FN42.*See Roark v. City of Hazen,* 189 F.3d 758, 761 (8th Cir.1999); *see also Chambers v. Wynne Sch. Dist.,* 909 F.2d 1214, 1216 (8th Cir.1990).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN43.Ark.Code Ann. § 16-123-105 (Supp.2001).

*4 The applicable analysis, established in *McDonnell Douglas Corp. v. Green,*[FN44] involves a burden-shifting framework.[FN45]"Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets [his] burden of establishing a *prima facie* case of employment discrimination. A minimal evidentiary showing will satisfy this burden of production."[FN46]Once a plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to state "a legitimate, non-discriminatory reason for its adverse employment action."[FN47]If the employer meets its burden, "the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination."[FN48]The plaintiff has the burden of persuasion at all times.[FN49]

FN44.*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801-04 (1973).

FN45.*Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir.2005).

FN46.*Id.*

FN47.*Davis,* 421 F.3d at 704*(quoting Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir.1994)).

FN48.*Id.*

FN49.*Id.*

To establish a *prima facie* case of discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently.[FN50]A minimal evidentiary showing will satisfy this burden of production.[FN51]

FN50.*McDonnell Douglas,* 411 U.S. at 802-03;*see also Davis,* 421 F.3d at 703.

FN51.*Id.*

Plaintiff claims he was treated disparately when he was terminated on June 23, 2004. Furthermore, Plaintiff alleges that his dismissal was not based on any misconduct on his part.[FN52]Plaintiff, an African America, is a member of a protected class and suffered an adverse employment action-being fired. However, Plaintiff cannot show that he was meeting Defendant's legitimate expectations because he continually failed to conduct himself according to Defendant's employee guidelines-his conduct toward customers and co-workers was not "professional." Defendant's Employee Handbook states that all employees are expected to be "courteous, polite, and friendly to ... customers, vendors, and to their fellow employees. No one should ... show disrespect to a customer or co-worker, or engage in any activity that could harm [the] Company's reputation."[FN53]The handbook also provides that "[e]mployees may not refuse to follow the directions of a supervisor or management official unless there is a risk to the employee's safety or the safety of others."[FN54]The Eighth Circuit has specifically held that "[i]nsubordination and violation of company policy are legitimate reasons for termination."[FN55]Plaintiff clearly was not meeting Defendant's legitimate expectations when he threw a clip board across the room, raised his voice against at least three different employees, and confronted a customer over leaf collection.

FN52. Doc. No. 48-3, p. 1.

FN53. Doc. No. 47, Ex. 2C-Waste Management Employee Handbook.

FN54.*Id.*

FN55.*Putman v. Unity Health System,* 348 F.3d 732, 736 (8th Cir.2003)*(quoting Kiel v. Select Artificial, Inc.*, 169 F.3d 1131, 1135 (8th Cir.1999)).*See also Cobbs v.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Grapat Employers, Inc.,* No. 4:05CV488, 2006 WL 1698297 (E.D. Ark. June 16, 2006) (Terminating employee for disruptive and insubordinate behavior at the workplace is a legitimate, non-discriminatory reason); *Miner v.. Bi-State Dev. Agency,* 943 F.2d 912, 913-14 (8th Cir.1991) (employee terminated for insubordination and violating various company policies).

Plaintiff is also unable to point to a single similarly situated employee."Where a pretext argument is based on comparisons of employees, a plaintiff must show that employees are similarly situated in all relevant aspects."[FN56]The test to determine whether employees are "similarly situated" (to warrant a comparison) is a "rigorous" one.[FN57]"Instances of disparate treatment can support a claim of pretext, but [a plaintiff] has the burden of proving that he and the disparately treated [employees] were similarly situated in all relevant respects."[FN58]"Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."[FN59]

FN56.*Harvey v. Anheuser-Busch, Inc.,* 38 F.3d 968, 972 (8th Cir.1994).

FN57.*Id.; see also Equal Employment Opportunity Commission v. Kohler Co.,* 335 F.3d 766, 775 (8th Cir.2003).

FN58.*Harvey,* 38 F.3d at 775-76 (*quoting Lynn v. Deaconess Medical Ctr.-West Campus,* 160 F.3d 484, 487 (8th Cir.1998)).

FN59.*Id.* at 776.

***5** Plaintiff alleges that two employees were treated differently, Adam Ratliff and James Westbrook. Like Plaintiff, Mr. Ratliff was hired as a rear-load driver and received the same rate of pay. However, because Mr. Ratliff had more seniority and training, he was able to drive the box-truck route. The box-truck route allowed Mr. Ratliff to perform residential pick-up in the morning and commercial box pick-up in the afternoon. Therefore, when Mr. Ratliff drove the box-truck route, he was compensated at a higher rate for his increased afternoon duties. Defendant notes that Plaintiff never showed interest in or requested to be trained for the box-truck position. Likewise, Mr. Westbrook was hired as a commercial driver, whereas Plaintiff was hired as a residential driver. Under the collective bargaining agreement, commercial drivers are paid at a higher rate than residential drivers.[FN60]

FN60. Doc. No. 47, Ex. 1.

Mr. Ratliff and Mr. Westbrook were not similarly situated. First, Plaintiff has presented no evidence that either man was ever insubordinate at work. Second, Defendant has shown that the two men were paid at different rates than Plaintiff due to different work assignments. Because Plaintiff has not produced any evidence that a similarly situated white person engaged in the same insubordinate conduct as he did, Plaintiff's disparate treatment claim fails.

Even if Plaintiff met his evidentiary burden, Plaintiff cannot prove that Mr. Whale's decision to fire him for insubordination was a pretext for race discrimination-it is particularly noteworthy that Mr. Whale and the Union officials who were at the termination meeting are all African Americans. Plaintiff has also not shown that Defendant decided to fire him because he called the Integrity Help Line with pay issues.

By stating a legitimate, non-discriminatory reason for the termination, the burden shifts back to Plaintiff, who must prove that the proffered reasons are merely pre-textual. A reason cannot be pre-textual unless "it is shown both that the reason was false, and that the discrimination was the real reason."[FN61]Plaintiff must substantiate his allegations with sufficient probative evidence "based on more

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

than mere speculation, conjecture, or fantasy."FN62

FN61.*Id,*.

FN62.*Wilson v. International Business Machines Corp.*, 62 F.3d 237, 241 (8th Cir.1995); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (explaining that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at the summary-judgment stage of an employment-discrimination case).

Although Plaintiff argues that he suffered from disparate pay and that he was fired just days after calling Defendant's Integrity Help Line, there is no credible evidence that the pay mistakes were caused by anything other than clerical errors [FN63]-also, Plaintiff misunderstood what he should have been paid.[FN64]As noted above, Mr. Westbrook and Mr. Ratliff were paid at differed rates due to seniority, different job tasks, and different job titles.

FN63. See above discussion of Plaintiff's beliefs regarding Mr. Ratliff. Also, Plaintiff's pay was corrected by $12.91 after Defendant learned that Plaintiff's drove higher paying routes on certain dates.

FN64. Defendant realized through the discovery of this lawsuit that Plaintiff was incorrectly paid $6.50 per hour rather than $8.00 per hour as a "driver in training." Defendant states that Plaintiff was incorrectly labeled a "helper in training," who earned $6.50 per hour.

During Plaintiff's employment, he was never denied any promotions, pay raises, or benefits he asked for.[FN65]Employee pay, benefits, seniority, and promotions are determined by the Union's collective bargaining agreement with Waste Management. All promotions and rates of pay within the jobs covered by the collective bargaining agreement, are governed by seniority and qualifications under the collective bargaining agreement. Plaintiff never filed a grievance with his union, nor did he complain to anyone about race discrimination while he was employed by Defendant.[FN66]In fact, Mr. Whale filled Plaintiff's position in October 2004 with Sylvia Rainey, an African American female.FN67

FN65. Doc. No. 22; "When Plaintiff had a complaint about not being paid the proper rate of pay under the collective bargaining agreement for working as a Residential Rear Load Driver, instead of filing a grievance through the Union, he refused to accept his payroll check."

FN66. Doc. No. 47, Ex. 3 at 105, 198-200.

FN67.*See, Twymon v. Wells Fargo & Co.*, 403 F.Supp.2d 921, 944 (S.D.Iowa 2005)*(quoting Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 863 (8th Cir.1997) (inferring discrimination where positions were filled with individuals not of the plaintiff's race)).

**C. Constitutional Allegations**

***6** Plaintiff alleges federal civil rights violations-namely, violations of due process and equal protection guaranteed by the Constitution and § 1981, § 1983. In his pleadings, Plaintiff argues that Defendant is a state agency because it provides a public service. Without reaching the merits of whether Defendant is, in fact, a state agency, Plaintiff's allegations fail to trigger any Due Process Clause or Equal Protection Clause protections as a matter of law. Because it has already been determined that Plaintiff failed to establish a violation under any of her causes of action, Plaintiff's constitutional claims also fail as a matter of law.[FN68]Therefore, I will not consider the question of whether Defendant is a state agency.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN68. *Valadez v. Graham,* 474 F.Supp. 149 (D.C.Fla.1979) (Since court ruled that there had been no violations of federal law or constitutional principles, claims of civil rights violations based on the same constitutional and statutory provisions must fail as a matter of law.); *see also Mosby v. Mabry,* 697 F.2d 213, 215 (8th Cir.1982).

**IV. Conclusion**

Plaintiff has failed to establish a *prima facie* case of disparate treatment; therefore, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff' Motion to Continue (Doc. No. 53) is DENIED as MOOT.

IT IS SO ORDERED this 30th day of August, 2006.

E.D.Ark.,2006.
Scott v. Waste Management of Arkansas South
Slip Copy, 2006 WL 2523439 (E.D.Ark.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.