**H**
Mosley v. Potter
D.Me.,2008.
Only the Westlaw citation is currently available.
United States District Court,D. Maine.
Sharon E. MOSLEY, Plaintiff
v.
John E. POTTER, Postmaster General of the United States Postal Service, Defendant.
**Docket No. 07-96-P-S.**

March 27, 2008.

Theodore H. Kirchner, Jennifer A.W. Rush, Norman, Hanson & Detroy, Portland, ME, for Plaintiff. Anthony T. Rice, U.S. Postal Service Law Dept., Windsor, CT, Evan J. Roth, U.S. Attorney's Office, Portland, ME, for Defendant.

***RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT***

DAVID M. COHEN, United States Magistrate Judge.
*1 The defendant, the Postmaster General of the United States Postal Service, moves for summary judgment on all claims in this case in which the plaintiff alleges illegal discrimination based on gender and physical disability as well as unlawful retaliation for her reports of illegal discriminatory conduct. I recommend that the court grant the motion.

## I. Summary Judgment Standards

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c); *Santoni v. Potter,* 369 F.3d 594, 598 (1st Cir.2004). "In this regard, material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.' " *Navarro v. Pfizer Corp.,* 261 F.3d 90, 93-94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."*Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e)."As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."*In re Spigel,* 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

### B. Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PENGAD-Bayonne, N.J. GOVERNMENT EXHIBIT 8

56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id.*The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id.*The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id.*The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id.*

*2 Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained i n a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."*Id.; see also, e.g., Cosme-Rosado v. Serrano-Rodriguez,* 360 F.3d 42, 45 (1st Cir.2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II. Factual Background

The following undisputed material facts are properly presented in the parties' respective statements of material facts. The plaintiff began to work for the United States Postal Service ("USPS") in 1975. Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF") (included in Plaintiff's Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 19) beginning at 16) ¶ 1; Defendant's Response to Plaintiff's Statement of Additional Facts ("Defendant's Responsive SMF") (Docket No. 23) ¶ 1. In October 2005 she applied for disability retirement benefits. Statement of Undisputed Material Facts i n Support of Defendant's Motion for Summary Judgment ("Defendant's SMF") (Docket No. 17) ¶ 27; Plaintiff's Responsive SMF ¶ 27. The application was approved and the plaintiff has been receiving such benefits ever since. *Id.* ¶ 28.

During the years leading up to August 2004 the plaintiff was employed in Westbrook, Maine as a Window Distribution Clerk. *Id.* ¶ 1. While working at the Westbrook Post Office, the plaintiff developed a work-related injury to both of her hands, which required surgeries on January 2, 2002 and July 24, 2002. Plaintiff's SMF ¶ 5; Defendant's Responsive SMF ¶ 5. Following each of the operations, she was out of work for a period of time on workers' compensation and then returned to work. *Id.* ¶ 6. On October 1, 2003 the USPS gave the plaintiff an offer of a limited duty assignment with accommodations as follows: No heavy lifting, limit to 20 lbs; no overtime, 40 hours only; limit pinching; break when no window activity throughout the day. *Id.* ¶ 7. On about August 2, 2004 the plaintiff stopped working at the Westbrook Post Office and has not performed work for the USPS since that time. Defendant's SMF ¶ 4; Plaintiff's Responsive SMF ¶ 4.

*3 On June 22, 2005 the plaintiff made a formal request for reasonable accommodation. Plaintiff's SMF ¶ 22; Defendant's Responsive SMF ¶ 22. On June 23, 2005 the District of Maine Reasonable Ac-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

commodation Committee ("DRAC") met regarding the plaintiff for the first time. Defendant's SMF ¶ 7; Plaintiff's Responsive SMF ¶ 7. On that date the DRAC determined that the plaintiff did not qualify for an accommodation. *Id.* ¶ 8.

On June 24, 2005 the USPS received a form dated June 22, 2005 in which Physician's Assistant Ann Hurd informed the USPS of the plaintiff's revised medical restrictions. *Id.* ¶ 9. The medical restrictions were that the plaintiff should engage in "*no window* or *customer service work* " (emphasis in original), as well as the following restrictions: "Fine motor pincher/grasp no longer than 30 min[utes] without a break,""[c]apable of answering phones (full time) M-F 40 hrs/week,""(Preferred assignment not in Westbrook office) last resort,""[n]o lifting up to 20 lbs and no sack pulling[.]"*Id.* ¶ 11.On July 8, 2005 the DRAC decided to invite the plaintiff to attend its next meeting on July 14, 2005. *Id.* ¶ 12.

On July 14, 2005 the plaintiff, together with her union representative, attended the DRAC meeting, as did Occupational Health Nurse Kathy Dyer, Labor Specialist Janet Peterson and Injury Compensation Specialist Lisa Gallagher.*Id.* ¶ 13.At that meeting, the members of the DRAC reviewed with the plaintiff what Gallagher considered to be the essential functions of the plaintiff's bid job [FN1] in order to establish her ability to perform each function with or without accommodation. *Id.* ¶ 14 .[FN2]The plaintiff identified the following as types of work that she could perform: distribution work, markups, ordering supplies and equipment, driving, pushing empty carts, lifting partial tubs, lifting and carrying mail, hanging up empty sacks, platform work, opening trays, sweeping cases, working the registry and interacting with customers. Plaintiff's SMF ¶ 38; Defendant's Responsive SMF ¶ 38. Also at that meeting, the plaintiff indicated that she would work answering the telephone as an accommodation. Defendant's SMF ¶ 16; Plaintiff's Responsive SMF ¶ 16. The USPS did not have any regular positions open that involved answering telephones 8 hours per day. *Id.* ¶ 21.The plaintiff told the members of the DRAC that she really wanted to get back to work and asked that they find a way to help her do that. Plaintiff's SMF ¶ 41; Defendant's Responsive SMF ¶ 41. The plaintiff has requested that she be allowed to rotate duties with the other clerks at the Westbrook Post Office so that she would not be doing window work all day without breaks. *Id.* ¶ 42.

FN1. The term "bid job" is not defined by either party in the statements of material facts or memoranda of law that have been submitted.

FN2. The plaintiff purports to deny this paragraph, but only "to the extent that it represents a legal conclusion regarding Lisa Gallagher's interpretation of the meaning of essential functions."' Plaintiff's Responsive SMF ¶ 14. I do not read the paragraph as stating a legal conclusion, but I have made it clear in this sentence that what was reviewed was what Gallagher believed to be the essential functions of the plaintiff's job.

On a form dated July 20, 2005 Physician's Assistant Ann Hurd further informed the USPS of the plaintiff's medical restrictions. Defendant's SMF ¶ 23; Plaintiff's Responsive SMF ¶ 23. The medical restrictions provided that the plaintiff was "[u]nable to perform customer service duties" as well as the following additional restrictions: "[n]o pinching or peeling (very fine motor skills),""[n]o pulling or pushing, no overhead work,""[a]ble to answer phones, drive a vehicle, lift up to 20 lbs,""[a]ble to walk/stand-no restrictions,""[l]imited to Keyboard/ writing (20 minutes per hour)-not continuous,""[a]ble to do light weight grasping (20 minutes per hour)," able to work "[u]p to 40 hr week maximum," and "[o]verall, needs a controlled, supportive non-demanding work environment[.]"*Id.* ¶ 25.

*4 On July 21, 2005 the DRAC wrote to the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff and told her that she could not be accommodated. Plaintiff's SMF ¶ 48; Defendant's Responsive SMF ¶ 48. In the letter the DRAC stated that it had also reviewed reassignment opportunities within commuting distance. *Id.* By letter dated October 23, 2005, Physician's Assistant Ann Hurd described the plaintiff's condition as follows: "Sharon [w]as previously given a 23% permanent impairment by her hand surgeon, Dr. Chance, who performed bilateral hand arthoplasties [sic]. It has become apparent that Sharon is no longer able to perform the function of her bid job' and has no further option than to go out on disability. This permanent impairment coupled with the ongoing mental anguish and stress from the inability to follow restrictions have rendered Sharon unable to perform the necessary functions of her job." Defendant's SMF ¶ 26; Plaintiff's Responsive SMF ¶ 26.

On the application form for disability benefits, where it was necessary to describe the disabling condition, the plaintiff wrote: "Bid job is distribution window clerk, primary position is on the window. Job requires constant fine motor skills, ie, grasping, pinching, peeling, making change, lifting, all with a repetitive nature. Increasing demands made increased [frust]ration, negative atmosphere and [in]tolerable levels of pain and hand swelling[.]"*Id.* ¶ 29.Also on this form, where it was necessary to describe the requested job accommodations, the plaintiff wrote: "Rest breaks for hands every 30 min. No customer service, ie window duties. Restrict lifting to 25 # . No sack pulling. Limited writing and keyboarding. Minimal grasping and pinching. Professionally provide a positive work environment[.]"*Id.* ¶ 30.On this form, where it was necessary to state the date she became disabled, the plaintiff wrote "08-02-2004[,]" and where it was necessary to state the name of the medical care provider who would substantiate her condition, she wrote: "Ann Hurd, PA-C (for Christopher Bartlett, MD)[.]"*Id.* ¶¶ 31-32.

Westbrook Postmaster John O'Brien, who took that job during the time when the plaintiff was out of work, Plaintiff's SMF ¶ 18; Defendant's Responsive SMF ¶ 18, concluded that there were only 1-2 hours of work available in Westbrook each day that were safely within the plaintiff's medical restrictions, Defendant's SMF ¶¶ 33-34; Plaintiff's Responsive SMF ¶¶ 33-34. Gallagher discussed with O'Brien what was available for safe work in Westbrook. *Id.* ¶ 35.Westbrook is a small office that is limited to a retail sales operation with no delivery functions. *Id.* ¶ 36.[FN3]O'Brien needed to wait for the plaintiff's year-end date to pass until he could begin the process of moving her "off the rolls," so that he could fill her position. Plaintiff's SMF ¶ 20; Defendant's Responsive SMF ¶ 20. He testified that his goal was to get a fully staffed office, whether that meant getting the plaintiff back to work or getting her on disability retirement. *Id.* & Defendant's Responsive SMF ¶¶ 19-20. During his tenure as Postmaster in Westbrook, O'Brien has never offered any employee a position with the limited scope of permissible duties that applied to the plaintiff pursuant to her medical restrictions. Defendant's SMF ¶ 38; Plaintiff's Responsive SMF ¶ 38.

> FN3. The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but the facts asserted in the denial do not address this portion of the paragraph, which accordingly is deemed admitted to the extent that it is supported by the citation to the summary judgment record given by the defendant. Local Rule 56(f).

*5 On August 9, 2005 Gallagher met with Dyer and O'Brien in a further effort to find limited-duty work for the plaintiff. *Id.* ¶ 44.On that day, the USPS arranged for an upper-extremity capacity examination in order to determine whether the plaintiff could return to productive work at the USPS.*Id.* ¶ 45.Kim Winling of the U.S. Healthworks Group provided the USPS with a report about the plaintiff's ability to work in Westbrook. *Id.* ¶ 46.The plaintiff felt that the report was a "fair assessment[ .]" *Id.* ¶ 47.The USPS relied on U.S. Healthworks' profes-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sional expertise regarding the type of work that the plaintiff could safely perform. *Id.* ¶ 48.FN4The assessment that was the basis of the U.S. Healthworks report was the service that is offered by businesses in Maine to identify safe work tolerance levels.*Id.* ¶ 50.FN5Winling performed additional work and provided the USPS with a second report dated September 29, 2005 which concluded that the plaintiff could not tolerate the frequent pinching and grasping involved in the Westbrook window work. *Id.* ¶ 52.FN6

FN4. The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but the substance of the denial is that "the USPS should have been relying on the advice of a physician."Plaintiff's Responsive SMF ¶ 48. This "denial" does not address the factual assertion made in paragraph 43 of the defendant's statement of material facts, which accordingly is deemed admitted because it is supported by the citation given to the summary judgment record.

FN5. The plaintiff purports to deny this paragraph of the defendant's statement of material facts, asserting that "[t]he record citation does not support the statement" and "[i]t only represents K. Dyer's opinion regarding FCE's," then repeating the assertion that the USPS "should have been relying on the advice of a physician."Plaintiff's Responsive SMF ¶ 50. Again, the latter assertion is not responsive to the defendant's statement of material facts. The record citation does in fact support the paragraph as I have modified it. Deposition of Kathy Dyer, R.N. (Attachment 10 to Defendant's SMF) at 12. As presented in that source, the statement is one of fact, not merely of opinion.

FN6. The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but the only assertion in that "denial" relevant to the portion of the paragraph which I have included in the narrative above is that "the worksite evaluator is not a physician and there is no evidence that she is qualified to determine what is safe for a patient, as opposed to what causes the patient discomfort."Plaintiff's Responsive SMF ¶ 52. I have not used the work "safe" in my presentation of a portion of this paragraph, and the only authority cited by the plaintiff for this challenge to Winling's credentials is the August 29, 2005 report-not the report which is the subject of the relevant paragraph-without a pinpoint citation to any page of that 9-page document. The report is signed at several points by "Kim Winling, OTR/L," an abbreviation for which no explanation is given. Key Method of Functional Capacity Assessments ("August 29 Report") (Attachment 25 to Plaintiff's SMF) at [2], [4] & [8]. She is also described as an "Assessment Specialist." *Id.* at [8]. There is no suggestion in this document that Winling was not qualified to offer the opinions and conclusions presented in her report.

In recent memory, the DRAC has evaluated approximately 10 full time employees who were out of work and wanted to return. *Id.* ¶ 57.Typically, by the time consideration is brought to the attention of the DRAC, the medical restrictions most likely eliminate an essential function of the position. *Id.* ¶ 58.It is not the DRAC's function to find "make work" for an employee, but rather to determine if the employee can be reasonably accommodated in a regular position for which the employee is both qualified and able to perform the essential functions. *Id.* ¶ 60.During the period when the DRAC considered accommodation for the plaintiff, it denied various accommodation requests by male and female employees. *Id.* ¶ 62.

On August 23, 2005 the plaintiff first contacted an

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEO counselor about the claims that form the basis of this lawsuit and requested pre-complaint counseling. *Id.* ¶ 63; Plaintiff's SMF ¶ 62; Defendant's Responsive SMF ¶ 62. The plaintiff filed her formal EEO complaint on September 7, 2005. Defendant's SMF ¶ 64; Plaintiff's Responsive SMF ¶ 64. In that complaint, the plaintiff mentioned only Gallagher as the person who took the alleged discriminatory actions and checked only the box for discrimination based on sex. *Id.* ¶¶ 65-66.In that complaint, the plaintiff stated that the date on which the alleged act(s) of discrimination occurred was August 10, 2005. *Id.* ¶ 67.On the portion of the complaint form where she was asked to set forth the specific actions that resulted in the complaint, the plaintiff wrote, *inter alia:*"Lisa Gallagher bl[atently] would NOT accept the restrictions that were submitted for both approved workers compensation claims # 010370372 and # 010373400, right and left thumbs respectively, following Anthroplasty surgery on both thumbs [.]"*Id.* ¶ 68.

*6 On September 23, 2005 the manager of EEO Compliance and Appeals wrote to the plaintiff to notify her that it had accepted her complaint. Plaintiff's SMF ¶ 72; Defendant's Responsive SMF ¶ 72. The letter included the following statements:

> The complainant claims discrimination based on sex and physical disability, in that she was denied restoration when her June 22, 2005 request for accommodation was denied on July 21, 2005. It is noted that you did not specifically check off the box entitled "disability" discrimination when you filed your formal complaint, PS Form 2565. You did raise physical disability when you sought EEO counseling. A fair reading of the narrative you provided when you filed your formal complaint indicates you are raising physical disability as a basis of discrimination.... As such, I am recognizing physical disability in addition to sex discrimination as your bases of discrimination.

*Id.* ¶ 72.

On November 2, 2005 the DRAC noted that the plaintiff's request had been denied due to her "psychosocial disorder." *Id.* ¶ 93.

### III. Discussion

#### A. Punitive Damages

The complaint seeks punitive damages "for [the defendant's] clear, willful and intentional violations of Title VII [42 U.S.C. § 2000e-2(a) and 2000e-3(a) ] and the Rehabilitation Act."Complaint and Demand for Jury Trial ("Complaint') (Docket No. 1) at 8. The defendant seeks dismissal of this claim, asserting that the USPS is not liable for punitive damages in employment discrimination claims, citing *Oakstone v. Postmaster General,* 397 F.Supp.2d 48 (D.Me.2005). Motion for Summary Judgment, etc. ("Motion") (Docket No. 16) at 15.The plaintiff apparently agrees, although it is difficult to discern what the plaintiff is saying in her only mention of this issue. Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 18) at 20 n. 9. In *Oakstone,* Judge Woodcock of this court held that punitive damages are not available in Title VII cases against the USPS. 397 F .Supp.2d at 61-62. That holding applies here, and the defendant is entitled to summary judgment [FN7] on the plaintiff's claim for punitive damages.

> FN7. The defendant repeatedly asks for "dismissal" of certain of the plaintiff's claims within the motion for summary judgment. *E.g.,* Motion at 15 (retaliation claim and request for punitive damages); Reply at 5 (retaliation claim). Since what is before the court is a motion for summary judgment, I believe that summary judgment is the appropriate form of relief.

#### B. Failure to Exhaust Administrative Remedies

The defendant contends that "all matters that oc-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

curred more than 45 days before" the plaintiff contacted an EEO counselor on August 23, 2005 are precluded from consideration by this court as untimely and further that this court may consider only one event, because that is the only event specified in the plaintiff's formal EEO complaint. Motion at 3-6. The plaintiff responds that she complains of a serial continuing violation, which allows her to include events that would otherwise be time-barred, and that her EEO complaint was deemed by the USPS to include claims of both sex and disability discrimination. Opposition at 12-14. As the defendant points out, Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Reply") (Docket No. 22) at 4-5, the plaintiff fails to address the defendant's argument that her retaliation claim is barred by her failure to raise it in her formal EEO complaint.

*7 "Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court."*Jensen v.. Frank,* 912 F.2d 517, 520 (1st Cir.1990). An aggrieved person must contact an EEOC counselor within 45 days of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1). A serial continuing violation "is composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII."Jensen 912 F.2d at 522. An issue that is not presented to the employing agency during administrative proceedings may not be raised for the first time in federal court. *Roman-Martinez v. Runyon,* 100 F.3d 213, 219 (1st Cir.1996).

An employee may bring to a court a claim of retaliation under Title VII without first presenting that claim to the agency if the retaliation claim is reasonably related to and grew out of the alleged discrimination that the employee did report-"*e.g.,* the retaliation is for filing the agency complaint itself." *Clockedile v. New Hampshire Dep't of Corrections,* 245 F.3d 1, 6 (1st Cir.2001). Here, however, the plaintiff asserts that the same conduct that constituted the discrimination of which she complains in the complaint also constituted the retaliation of which she complains-retaliation for her "previous[ ] engage[ment] in protected EEO activity and previous[ ] assert[ion of] rights with respect to the federal workers' compensation program"-and *not* that the defendant retaliated against her for filing the EEO complaint that gives rise to this action. Complaint ¶¶ 42-43.[FN8]Such a retaliation claim must be administratively exhausted before it may be brought before a federal court. *Anderson v. American Airlines, Inc.,* 252 Fed.Appx. 166, 168 (9th Cir.2007). The plaintiff here has made no attempt to show that her retaliation claim was presented to the USPS before this action was filed and the defendant is accordingly entitled to summary judgment on Count III, the count alleging unlawful retaliation. *Id.*

FN8. Neither the complaint nor the plaintiff's summary judgment materials describe the plaintiff's "previous engagement" in EEO activity or assertion of rights under the workers' compensation program, but it is clear that she is not alleging violation of her workers' compensation rights in this action, so any such claim cannot be "reasonably related" to the violations she does allege in this action. The only EEO activity by the plaintiff that occurred "previous" to the activity that forms the basis of her complaint mentioned in her summary judgment materials is the filing of a successful EEO complaint in 1978. Plaintiff's SMF ¶ 94. That fact could only be relevant to the instant lawsuit if it is the "previous engagement" in EEO activity to which the complaint refers.

It is clear that the USPS considered the plaintiff's formal EEO complaint to encompass both her claim of sex discrimination and her claim of disability discrimination. A straight failure-to-exhaust argument as to either must therefore fail. With respect to the defendant's timeliness argument, he does not make clear which events of which the plaintiff complains he contends took place more than 45

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

days before August 23, 2005. Motion at 3-6. The plaintiff asserts that "the vast majority of the actions [at issue] occurred after July 9, 2005," Opposition at 12, which is apparently 45 days before August 23, 2005. She states that "the USPS's conduct following [her] request to return to work constitutes a continuing violation and all of that conduct is properly before the Court."*Id.* at 13.Unfortunately, she does not specify the date of this "request to return to work." She apparently means to refer to her June 22, 2005 "formal request for reasonable accommodation." *Id.* at 2 (citing Plaintiff's SMF ¶¶ 22, 27); Plaintiff's SMF ¶ 22; Defendant's Responsive SMF ¶ 22. The defendant does not return to his timeliness argument in his reply memorandum. I will deal with events between June 22 and July 9, 2005 as necessary in this recommended decision when they affect the substance of a claim rather than attempting to make a blanket ruling on timeliness at this stage.

### C. Count I

***8** Count I asserts a claim under the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*[FN9] Complaint ¶¶ 11-34. The defendant contends that, whether the plaintiff's claim should properly be construed as alleging disparate treatment based on physical disability or failure to accommodate, or both, he is entitled to summary judgment because the plaintiff cannot establish a *prima facie* case of either. Motion at 11-12. This is so, he asserts, because (i) the plaintiff was unable to perform the essential functions of her position and thus was not qualified for the position; (ii) accommodating her disability would have been an undue burden for the Westbrook Post Office; and (iii) she cannot prove that the USPS could have provided a reasonable accommodation. *Id.*

FN9. An employment discrimination claim under section 794 of the Rehabilitation Act is analyzed under the same standards applicable to Title I of the Americans with Disabilities Act. *Oliveras-Sifre v. Puerto Rico Dep't of Health,* 214 F.3d 23, 25 n. 2 (1st Cir.2000).

To satisfy the requirements of a *prima facie* case of disparate treatment based on disability, a plaintiff must establish that (i) she suffers from a disability, as defined by the relevant statute; (ii) she was nevertheless able to perform the essential functions of her job, either with or without reasonable accommodation; and (iii) the defendant took an adverse employment action against her because of, in whole or in part, her protected disability.*Freadman v. Metropolitan Prop. & Cas. Ins. Co.,* 484 F.3d 91, 99 n. 7 (1st Cir.2007) (ADA claim). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason identified was the real reason. *Id.* at 99.If the defendant offers such a reason, the initial inference of discrimination "evaporates," and the burden shifts back to the plaintiff to show that the proffered reason is "mere pretext, cloaking discriminatory animus[.]" *Id.* (citation and internal punctuation omitted).

It is not clear from the plaintiff's memorandum of law exactly what she contends is the adverse employment action taken by the defendant, but she does assert in passing that the USPS "forced her into disability retirement." Opposition at 16. I will accordingly consider that allegation as the plaintiff's position on the third element of the *prima facie* case.[FN10]She devotes most of her submission to an argument that she was able to perform the essential functions of her job with reasonable accommodation. *Id.* at 14-15.This argument goes to the second element of the *prima facie* case of disparate treatment. The defendant similarly concentrates on the second element, Motion at 11, so I will assume *arguendo* that the plaintiff has demonstrated an ability to establish the first and third elements of her *prima facie* case.

FN10. Involuntary retirement may constitute adverse employment action. *E.g.,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Diersen v. Walker,* 117 Fed.Appx. 463, 465 (7th Cir .2004); *Bradford v. Norfolk So. Corp.,* 54 F.3d 1412, 1420 (8th Cir.1995); *McCaw v. Potter,* 2006 WL 2520328 (D.Nev. Aug. 29, 2006), at *5; *Rivera Sánchez v. Autoridad de Energia Electrica,* 360 F.Supp.2d 302, 317 (D.P.R.2005).

The parties disagree on the "job functions," let alone the "essential functions," of the plaintiff's job as a Window Distribution Clerk. *See* Defendant's SMF ¶¶ 2-3, Plaintiff's Responsive SMF ¶¶ 2-3; Plaintiff's SMF ¶ 4, Defendant's Responsive SMF ¶ 4. Still, there is agreement that was the plaintiff's job. For purposes of the defendant's argument, that appears to be sufficient. The defendant contends that the plaintiff was unable to perform the essential functions of that position, whatever those functions were, because both she and her medical care provider, Hurd, "confirm that she could not perform those functions ."Motion at 11.

***9** This argument rests, in turn, on factual assertions in the defendant's statement of material facts to the effect that the plaintiff "agreed [at the July 14, 2005 DRAC meeting] that she was unable to perform the essential functions of her bid job because window work involved too much pinching, receipt writing, receiving packages, and writing in general, and that approximately 90% of the window work aggravated her medical condition[ ]" and that Hurd on June 22, 2005 and July 20, 2005 filled out and submitted to the USPS forms on which she stated that the plaintiff should perform "no window or customer service work[.]" Defendant's SMF ¶¶ 15, 11, 25. The plaintiff purports to deny paragraph 15 of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 15, but the citations she gives to the summary judgment record in support of that denial do not contradict paragraph 15. Deposition of Sharon E. Mosley ("Plaintiff's Dep.") (Attachment 20 to Defendant's SMF) at 57:17-24, 100:2-17; Declaration of Sharon E. Mosley ("Plaintiff's Decl.") (Attachment 2 to Plaintiff's SMF) ¶ 7. They simply support the assertion that the plaintiff told the DRAC members something else, which could have been in addition to what the defendant contends she said. They do not deny that the plaintiff said what the defendant contends she said. The citations to the summary judgment record provided by the defendant in support of paragraph 15 do in fact support the assertions in that paragraph. Kathy Dyer Deposition Exhibit 31 (Attachment 18 to Defendant's SMF) at [1]; [FN11] Deposition of Kathy Dyer ("Dyer Dep.") (Attachment 10 to Defendant's SMF) at 55, 65 (authenticating Exhibit 31); EEO Investigative Affidavit of Lisa M. Gallagher (pages [2]-[3] of Attachment 1 to Defendant's SMF) lines 30-31. Accordingly, paragraph 15 is deemed admitted.

FN11. Counsel for the defendant is reminded to provide pinpoint citations to relevant pages of cited documents.

The plaintiff does not dispute that Hurd filled out and submitted the forms that indicated that she should not perform any customer service functions or window work; rather, she asserts that the USPS cannot rely on those documents because Hurd is a physician's assistant and "the USPS does not accept the opinions of certified physician assistants[,]" citing paragraph 82 of her statement of material facts. Opposition at 14. That paragraph makes exactly the same assertion, citing the depositions of Dyer and Gallagher and the plaintiff's affidavit. Plaintiff's SMF ¶ 82. The defendant denies this paragraph, pointing out that the cited testimony refers to the requirements of the United States Department of Labor for workers' compensation claims, and asserting that the USPS chose not to ask for a physician's co-signature on the forms filled out by the physician's assistant for purposes of the DRAC consideration of the plaintiff's request for accommodation. Defendant's Responsive SMF ¶ 82. This is an accurate characterization of the testimony cited by the plaintiff. *See* Dyer Dep. at 25-26; Plaintiff's Decl. ¶ 11 (plaintiff was not sent to be evaluated by a physician, told that USPS would not accept Hurd's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

opinion or told to see a physician re work restrictions); Deposition of Lisa M. Gallagher ("Gallagher Dep .") (Attachment 4 to Defendant's SMF) at 36-37. It would be anomalous indeed if an employee could support her request for accommodation due to a physical disability with a report from her medical care provider and then successfully attack an unfavorable response on the ground that the employer should not have relied on that report.

***10** The plaintiff next contends that Dyer, Gallagher and O'Brien "were always of the opinion that the restrictions on" the forms filled out by Hurd "and the rationale supporting them[ ] needed to be clarified in order to determine whether [the plaintiff] could perform her bid job with or without accommodation[,]" citing paragraph 81 of her statement of material facts. Opposition at 14. That paragraph is denied by the defendant, who contends that the citations given by the plaintiff do not support this assertion. Defendant's Responsive SMF ¶ 81. I agree.

The deposition testimony of O'Brien cited by the plaintiff is to the effect that he could not recall ever receiving sufficiently specific medical documentation after August 9, 2005 to formulate a limited duty job offer for the plaintiff, and that "there was nothing to change our ... assessment that ... [the plaintiff could only be offered] one and a half to two hours [of work per day] ."Deposition of John S. O'Brien (Attachment 3 to Defendant's SMF) at 35-36. The cited evidence does not establish that O'Brien would have been the person to formulate such an offer and, indeed, he testified that he would not have been the individual who sought more information, *id.* at 35.Exhibit 12 to the Gallagher Deposition is a page of a document entitled "Claim Control Register" that records, after the date of August 9, 2005, "OHNA to schedule upper extremity Functional Capacity to identify specific work capacity [;]" after the date September 2, 2005, "K. Dyer to observe window clerks in Westbrook on a Friday to see if Sharon can do the job with accom[m]odations [;]" and "[K. Dyer] will contact a work site eval for help."Attachment 17 to Plaintiff's Responsive SMF.[FN12] Exhibit 20 to the Gallagher Deposition, a document entitled "Employing Agency Portion," includes the following in Section 14, entitled "Remarks:" "New medicals dated 6/22/05 Rec'd 6/24/05 not clear as to work restrictions & rational[e]. Clarification pending."Attachment 20 to Plaintiff's Responsive SMF. Exhibit 25 to the Gallagher Deposition is a single-page document with apparent notes entered after a series of dates. Presumably the reference is to an entry dated August 9, 2005 which reads as follows:

> FN12. The defendant objects to the cited exhibits to the Gallagher and O'Brien deposition, but not the exhibit to the Dyer deposition, as hearsay. Defendant's Responsive SMF ¶ 81. I expect that the plaintiff would characterize the portions of these documents on which she relies as either prior statements by the witness at whose deposition the exhibits were used or as admissions by the defendant, or both, and I agree. These are exceptions to the definition of hearsay. Fed.R.Evid. 801(d).

> Met with PM and OHNA-What can she do. What can't she do. Not clear on upper extremity limits. Decided to send for functional capacity. At best only 2 hrs or less work per day in distribution case.
>
> Attachment 23 to Plaintiff's Responsive SMF.

The testimony from the Gallagher deposition cited by the plaintiff in support of paragraph 81 of her statement of material facts provides that "we" "weren't really clear" about the number of times per day that the window clerk job required certain physical actions and that Kathy Dyer was going to observe the operation to get a better sense as to the frequency of those actions, so that the job as performed could be compared with the plaintiff's limitations "to see whether or not [the plaintiff] could actually do that job."Gallagher Dep. at 48. Exhibit 2 to the O'Brien Deposition is an e-mail dated June

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27, 2005 from Dyer to Scott Adams with a copy to Gallagher which directs to Gallagher the following statement: "Lisa we still have the restrictions to clear up as to how much she can type, write, file etc."Attachment 8 to Plaintiff's Responsive SMF. Exhibit 3 to the O'Brien Deposition is an e-mail from O'Brien to Gallagher and Dyer dated August 9, 2005, which includes in "a recap to today's meeting" the following statements: "It was agreed that the current medical documentation is contradictory and is not sufficiently specific to formulate a limited duty job offer[,]" and "Kathy will schedule a FFD or FCE as appropriate to determine what components of her position she can actually perform."Attachment 9 to Plaintiff's Responsive SMF. Exhibit 5 to the O'Brien Deposition appears to be a copy of the same document that is Attachment 23 to the Plaintiff's Responsive SMF with the addition of two hand-written entries. Those entries add nothing that is relevant to paragraph 81 of the plaintiff's statement of material facts. Finally, Exhibit 27 to the Dyer Deposition is an email from Gallagher to Dyer dated August 9, 2005 which asks Dyer to arrange an upper extremity functional capacity examination of the plaintiff as soon as possible because "[w]e are attempting to return [the plaintiff] to productive work for the postal service. The restrictions provided by her health care provider do not adequately define her work capacity."Attachment 12 to Plaintiff's Responsive SMF.

***11** None of these summary judgment materials supports the statement that Dyer, Gallagher and O'Brien were "always of the opinion that the restrictions on the M-1 forms, and the rationale supporting them, were unclear and needed to be clarified in order to determine whether Ms. Mosely could perform her bid job with or without accommodation."Plaintiff's SMF ¶ 81. At most, the materials establish that these individuals found Hurd's submissions to be insufficient in order to determine whether the plaintiff could perform a limited duty job, or her bid job with accommodations, and that all three intended to rely on the Winling evaluation, which was performed on August 28, 2005, Defendant's SMF ¶ 45 & Attachment 12 thereto; Plaintiff's Responsive SMF ¶ 46, for whatever clarification they needed in order to make that determination. The plaintiff accordingly finds no support for her argument that the defendant could have reasonably accommodated her physical restrictions in the desire of Dyer, Gallagher and O'Brien for more information as of August 9, 2005 and earlier.

The plaintiff next argues that a physician who supervised Hurd in the summer of 2005 recorded on October 1, 2007 his opinion of her upper extremity limitations at that time and that he based his opinion on restrictions set by her hand surgeon in 2005 "and that Ms. Mosley felt that she could perform work within those restrictions."Opposition at 15. The plaintiff cites paragraphs 99 and 100 of her statement of material facts in support of this argument. *Id.* The defendant objects to both paragraphs on the ground that this physician's letter is hearsay. Defendant's Responsive SMF ¶¶ 99-100. The entire citation to the physician's letter provided by the plaintiff in support of these paragraphs is "October 1, 2007 Dr. Bartlett letter."Plaintiff's SMF ¶¶ 99-100. Presumably she means to refer to Attachment 24 to her statement of material facts, a letter dated October 1, 2007 addressed "To Whom it may concern[.]" That letter, as submitted, is hearsay and the defendant's objection is sustained. The only remaining citation to the summary judgment record given in support of these paragraphs is to page 5 of the deposition of Ann Hurd, which merely establishes that Hurd had worked with Dr. Bartlett for eight years as of November 2005. Plaintiff's SMF ¶¶ 99-100. The plaintiff's contention that these paragraphs establish that the defendant could have reasonably accommodated her restrictions in 2005 is without evidentiary support.

The plaintiff next relies on Dyer's alleged statement that, if she were properly motivated to modify her work habits, the plaintiff could have performed the job functions of a window clerk, citing paragraph 84 of her statement of material facts. Opposition at 15. The defendant denies this paragraph, character-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

izing Dyer's statement as one of hope rather than fact, based on her deposition testimony. Defendant's Responsive SMF ¶ 84. This dispute makes no difference with respect to the issue of reasonable accommodation, however, given the repeated statement of the plaintiff's medical provider that she could not perform the functions of her window clerk job. While Dyer might have had a different opinion, that would not preclude the defendant from relying on Hurd's medical assessment.

***12** Finally, the plaintiff argues that the defendant was required to engage in an interactive process with her but did not. Opposition at 15-17. As the defendant points out, Reply at 3 n. 4, the plaintiff raises this issue for the first time in her opposition to the motion for summary judgment. There is no indication i n the summary judgment record that the plaintiff included this issue in her EEO complaint. She cites no such evidence in support of her argument. Accordingly, it may not be considered by this court now. *Roman-Martinez,* 100 F.3d at 219.

Given the plaintiff's failure to establish that she was able to perform the essential functions of her bid job, with or without reasonable accommodation, it is not necessary to consider the defendant's remaining arguments with respect to any claim of disparate treatment.

With respect to a claim of failure to accommodate the plaintiff, the defendant contends that the plaintiff was not qualified for the position to which she wished to return, citing 42 U.S.C. § 12112(b)(5)(A). Motion at 11.

> In order to survive a motion for summary judgment on a reasonable accommodation claim, the plaintiff must produce enough evidence for a reasonable jury to find that (1)[s]he is disabled within the meaning of the [Rehabilitation Act], (2)[s]he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it.

*Freadman,* 484 F.3d at 102 (citation and some internal punctuation omitted). For the reasons already discussed, I conclude that the plaintiff has not offered sufficient evidence to allow a reasonable jury to find that she was able to perform the essential functions of the window clerk job with or without a reasonable accommodation. This conclusion makes it unnecessary to consider the defendant's additional argument that the plaintiff did not make a sufficiently specific request for an accommodation. Motion at 9-10.

The defendant is entitled to summary judgment on Count I. *See generally Rios-Jiménez v. Principi,* --- F.3d ----, 2008 W L 651630 (1st Cir.2008), at * 6-* 7.

## D. Count II

Count II of the complaint alleges discrimination based on gender in violation of 42 U.S.C. § 2000e-2(a)(1) and -16(a). Complaint ¶¶ 35-40. Specifically, it alleges that the USPS treated her differently from the way it treated similarly situated male employees. *Id.* ¶ 38.The defendant contends that the plaintiff was not qualified to return to her job because she was unable to perform its essential functions and it did not accommodate any similarly situated male employees who were unable to perform the essential functions of their positions. Motion at 12-13.

The plaintiff apparently agrees that her ability to perform the essential functions of her job, with or without accommodation, is also an element of her claim of gender discrimination. Opposition at 19. Generally, a plaintiff who claims gender discrimination must establish a *prima facie* case of discrimination, following which the employer must articulate a legitimate, nondiscriminatory explanation for its action, leaving the plaintiff to prove that the defendant's explanation is a pretext for unlawful discrimination.*Mariani-Colón v. Department of Homeland Sec.,* 511 F.3d 216, 221 (1st Cir.2007).“[A] plaintiff establishes a *prima facie* case of discrimin-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ation by showing: 1)[s]he is a member of a protected class, 2)[s]he is qualified for the job, 3) the employer took an adverse employment action against [her], and 4) the position remained open, or was filled by a person with similar qualifications ."*Id.* A qualified individual is one who can perform the essential functions of the position at issue. *Johnson v. Westinghouse Elec. Corp.,* 752 F.Supp. 1000, 1003 (D.Utah 1990). Here, given the plaintiff's apparent acquiescence in the defendant's characterization of the applicable legal standard and my conclusion with respect to Count I that she has not established that she was qualified to perform the essential functions of the window clerk job in 2005, it necessarily follows that she was not qualified for that job for purposes of her sex discrimination claim. This makes it unnecessary to determine whether the summary judgment record contains sufficient evidence that similarly situated males were treated differently.

***13** The defendant is entitled to summary judgment on Count II.

## IV. Conclusion

For the forgoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED.**

D.Me.,2008.
Mosley v. Potter
Slip Copy, 2008 WL 877787 (D.Me.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.