UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROSEZOLA SELLERS,                    :
             Plaintiff,              :
                                     :
        v.                           :        CA 07-418 S
                                     :
ROBERT M. GATES,                     :
SECRETARY OF THE UNITED STATES       :
DEPARTMENT OF DEFENSE,               :
             Defendant.              :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

        Before the Court is Defendant's Motion to Dismiss
Plaintiff's Hostile Work Environment Claim (Doc. #4) ("Motion to
Dismiss" or "Motion") for failure to exhaust administrative
remedies.  The Motion has been referred to me for preliminary
review, findings, and recommended disposition pursuant to 28
U.S.C. § 636(b)(1)(B).  After reviewing the filings, listening to
oral argument, and performing independent research, I recommend
that the Motion be granted for the reasons stated below.

**I.  Facts**

        In the fall of 2005, Plaintiff Rosezola Sellers ("Plaintiff"
or "Sellers"), who is black, had been employed at the Navy
commissary in Newport, Rhode Island, for approximately seventeen
years.  See First Amended Complaint (Doc. #2) ("Amended
Complaint") ¶¶ 8-9, 11; see also Defendant's Exhibit ("Ex.") A
(Notice of Proposed Removal).  On October 17, 2005, Assistant
Commissary Officer Steven Furtado ("Furtado") issued Plaintiff a
Notice of Proposed Removal for failure to follow instructions,
disruptive behavior, and disrespectful conduct.  See Defendant's
Ex. A at 1.  On November 29, 2005, the Store Director, John
Blythe ("Blythe"), issued a decision terminating Plaintiff's

employment effective December 10, 2005.  <u>See</u> Defendant's Ex. B
(Decision to Notice – Removal).  Plaintiff then contacted an
Equal Employment Opportunity ("EEO") counselor on December 2,
2005.  <u>See</u> Defendant's Ex. C (EEO Counselor Report ICO EEO
Complaint of Rosezola Sellers ("EEO Counselor Report")) ¶ 7.
Plaintiff alleged during EEO counseling that, in terminating her,
Blythe discriminated against her based on her race and in
reprisal for prior EEO activity.[1]  <u>See</u> <u>id.</u> ¶¶ 4, 13; Defendant's
Ex. 2 (Counselor's Intake Sheet).

    After receiving a notice of final interview, <u>see</u> Defendant's
Ex. D (Notice of Final Interview), Plaintiff filed a formal EEO
complaint of discrimination on April 7, 2006, <u>see</u> Defendant's Ex.
E (Discrimination Complaint ("EEO Complaint")).  In her EEO
Complaint, Plaintiff identified Blythe, Furtado, Grocery Manager
Mary Gibson, and CAO[2] Specialist Bill McCollum as the individuals
who discriminated against her.  <u>See</u> <u>id.</u> ¶ 7.  The EEO Complaint
alleged only discrimination based on race, <u>see</u> <u>id.</u> ¶ 10, and did
not explain the basis for Plaintiff's belief that she had been
the victim of discrimination, <u>see</u> <u>id.</u> ¶ 9.[3]  As a result, the EEO
office requested a clarification of Plaintiff's EEO complaint.
<u>See</u> Defendant's Ex. F (Clarification of Formal Complaint of
Discrimination).  In response to this request, Plaintiff

---

[1] The EEO Counselor's Intake Sheet reflects that the date of the
alleged discrimination was "12-1-05," that the basis was "Race" and
"Reprisal," and that the only issue checked off was "Termination."
Defendant's Exhibit ("Ex.") 2 (Counselor's Intake Sheet).

[2] "CAO" apparently is a shorthand abbreviation for "Commissary
Management Specialist in charge of Computer Assisted Ordering."
<u>Sellers v. United States Dep't of Defense, et al.</u>, CA 05-381 S, slip
op. at 5-6 (D.R.I. Jan. 23, 2009)(Report and Recommendation of Martin,
M.J.) ("<u>Sellers I</u>") ("R&R of 1/23/09")

[3] Section 9 of the EEO Complaint stated: "EXPLAIN HOW YOU BELIEVE
YOU WERE DISCRIMINATED AGAINST (treated differently from other
employees or applicants)."  Defendant's Ex. E.  Plaintiff left this
section of the EEO Complaint blank.  <u>See</u> <u>id.</u>

submitted a written answer to section 9 of the EEO Complaint in which she explained how she believed she had been treated differently than a white person with respect to her charges of disrespectful behavior, disrespectful conduct, and failure to follow instructions that resulted in her termination.  See Defendant's Response to the Court's Order Dated June 18, 2008 (Doc. #10), Attachment (Amended Ex. G).[4]  Plaintiff stated in her answer that other employees, such as Gibson, Mike Texeira, McCollum, Diane Walsh, and Brenda Venable, engaged in misconduct and were treated differently than she was.  See id.  Plaintiff's EEO Complaint and written answer to section 9 of the EEO Complaint made no mention of any hostile work environment claim. See Defendant's Ex. E; Amended Ex. G.  Plaintiff did not include a hostile work environment claim in her EEO Complaint.  See Defendant's Ex. E.

On June 15, 2006, the EEO Office sent a letter to Plaintiff stating that the issue being investigated was:

> Did DeCA[5] illegally discriminate against you based on race (Black) and reprisal (prior EEO activity) when on December 10, 2005[,] you were removed from Federal service for failure to follow instructions, disruptive behavior, and disrespectful conduct?

Defendant's Ex. H (Letter from Andrade to Plaintiff of 6/15/06). The letter further advised that:

> If you believe the issues in your complaint are not correctly defined, please notify me, in writing within 7 calendar[] day[s] after you receive this letter, and specify why you believe the issues are not correctly defined.  If you fail to contact me, I will conclude you agree that the issues are properly defined.

---

[4] Hereafter, the Court cites directly to Amended Ex. G.

[5] "DeCA" is the Defense Commissary Agency, an independent agency within the United States Department of Defense, which operates the Newport commissary.  See Sellers I, R&R of 1/23/09 at 3-4.

Id.  The letter also reflects that a copy was sent to Plaintiff's attorney, Patricia Andrews.  See id.  Neither Plaintiff nor her attorney responded to this letter.[6]

On January 23, 2007, an EEO investigator contacted Plaintiff and requested a declaration from her regarding the EEO Complaint which she had filed relating to her termination.  See Sellers v. United States Dep't of Defense, et al., CA 05-381 S ("Sellers I"), Defendants' Memorandum in Opposition to Plaintiff's Second Amended Motion to Amend Complaint[7] ("Defendants' Oppos. to Motion to Amend Complaint"), Ex. 4 (Declaration of Elnora M. Jackson ("Jackson Decl.")) ¶¶ 3-4.[8]  On

_____

[6] Ms. Andrews represented at the June 11, 2008, hearing that she did not receive a copy of this letter.

[7] Defendants' Memorandum in Opposition to Plaintiff's Second Amended Motion to Amend Complaint was filed in support of Defendants' Response in Opposition to Plaintiff's Second Amended Motion to Amend Complaint (Doc. #23) in Sellers I.

[8] "[C]ourt records from related proceedings can be taken into account without converting a motion to dismiss into a summary judgment motion."  Kourtis v. Cameron, 419 F.3d 989, 994 n.2 (9th Cir. 2005), abrogated on other grounds, Taylor v. Sturgell, ___ U.S. ___, 128 S.Ct. 2161 (2008); Boateng v. Interam. Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000)("[A] court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment."); Buckles v. Columbus Mun. Airport Auth., NO. CS-00-986, 2002 WL 193853, at *3 n.3 (S.D. Ohio Jan. 14, 2002)("[T]he Court is entitled to 'consider public records, including court records in related cases,' without converting the motion to a motion for summary judgment.")(quoting Jackson v. City of Columbus, 67 F.Supp.2d 839, 853 (S.D. Ohio 1998), overruled in part on other grounds, 194 F.3d 737 (6th Cir. 1999)); see also Slaey v. Adams, Civil Action No. 1:08-cv-354, 2008 WL 5377937, at *4 (E.D. Va. Dec. 23, 2008)("Indeed, courts may take judicial notice of public documents (such as court records) neither referenced by nor integral to the plaintiff's complaint without converting a motion to dismiss into one for summary judgment.")(citing Gasner v. Dimviddie, 162 F.R.D. 280, 282 (E.D. Va. 1995); Bes Enter., Inc. v. Natanzon, 2006 WL 3498419, at *4 (D. Md. 2006); see also Papasan v. Allain, 487 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss ... we are not precluded in our review of the complaint from taking judicial notice of items in the public record)).

the first page of the declaration form which was sent to
Plaintiff, the "ISSUE" was stated in bold print:

> Was the Complainant discriminated against based on her
> race (African American) and prior EEO activity when on
> December 5, 2005, she was removed from Federal service
> for failure to follow instructions, disruptive behavior
> and disrespectful conduct?

Id., Ex. 4B at 2 (Declaration under Penalty of Perjury).
Following this statement, the declaration posed a series of
questions for Plaintiff to answer regarding the complaint which
she had filed.  See id. at 2-6.  The final question posed was:
"Do you have anything else to add relevant to the accepted
complaint?"  Id. at 6.  Plaintiff did not respond to the EEO
investigator's request for a declaration.  Jackson Decl. ¶ 5.

On May 15, 2007, the EEO investigator e-mailed Plaintiff's
attorney, requesting her assistance in obtaining the declaration
from Plaintiff.  See id. ¶ 6; see also id., Ex. 4E (Emails dated
5/15/07).  Plaintiff's attorney responded the same day, stating:
"Before doing so, I would appreciate receiving any documents and
information you have received from the other side.  Is that
possible?"  Jackson Decl. ¶ 7 (quoting Ex. 4E).  The investigator
then emailed and faxed to Plaintiff's attorney the managers'
declarations that had been received pertaining to Plaintiff's
removal from DeCA in December of 2005.  Id. ¶ 8.

On May 17, 2007, the investigator asked Plaintiff's attorney
by email when she could expect Plaintiff's declaration.  Id. ¶ 9.
Plaintiff's attorney replied by email, stating "I will let you
know."  Id. ¶ 10 (quoting Ex. 4F (Emails dated 5/17/07)).  The
requested declaration was never provided to the investigator.
Id. ¶ 11.  Despite this failure, Plaintiff's claim that she had
been terminated because of her race and in reprisal for prior EEO
activity was investigated, and a report of the investigation was
provided to Plaintiff.  See Defendant's Ex. I (Final Agency

Decision) at 1.  On August 20, 2007, DeCA issued a Final Agency
Decision,[9] finding that the Agency did not discriminate against
Plaintiff based on her race (black) or her prior EEO activity
with respect to her termination.  See id.

## II.  **Travel**

Plaintiff filed her Complaint (Doc. #1) on November 16,
2007.  See Docket.  This Complaint was not served on the named
defendants.[10]  See Defendant's Memorandum of Law in Support of
His Motion to Dismiss Plaintiff's Hostile Work Environment Claim
("Defendant's Mem.") at 4; id. at 4 n.2.  Plaintiff filed her
Amended Complaint on February 14, 2008, naming Robert M. Gates,
Secretary of the United States Department of Defense
("Defendant"), as the sole defendant.  See Amended Complaint.
The Amended Complaint alleged claims of race discrimination
(Count I) and retaliation (Count III) with respect to Plaintiff's
termination.  Amended Complaint ¶¶ 13, 20-22, 26-28.  It also
alleged a hostile work environment claim (Count II) based on
racial and/or retaliatory harassment.  See id. ¶¶ 14, 23-25.

The instant Motion to Dismiss was filed on April 21, 2008,
by Defendant.  Plaintiff filed an objection to the Motion,
supported by a memorandum, on May 7, 2008.  See Plaintiff's
Objection to Defendant's Motion to Dismiss Plaintiff's Hostile

---

[9] The Final Agency Decision states the issue accepted for
investigation:

> Was the complainant discriminated against based on race
> (Black) and reprisal (prior EEO activity), when on December 1,
> 2005, she was removed from federal service for failure to
> follow instructions, disruptive behavior, and disrespectful
> conduct?

Defendant's Ex. I (Final Agency Decision) at 1.

[10] The Complaint named both the United States Department of
Defense and Robert M. Gates, Secretary of the United States Department
of Defense, as Defendants.  See Complaint (Doc. #1).

Work Environment Claim (Doc. #6) ("Objection").  Defendant filed
a reply memorandum on May 23, 2008.  <u>See</u> Defendant's Reply in
Support of His Motion to Dismiss Plaintiff's Hostile Work
Environment Claim (Doc. #8) ("Defendant's Reply").

The Court conducted an initial hearing on the Motion on May
28, 2008.  After Defendant's counsel had presented her argument,
counsel for Plaintiff indicated that she had only received
Defendant's Reply the previous Friday (immediately preceding the
Memorial Day weekend) and had not had time to read all the cases
which Defendant had cited.  Accordingly, the Court continued the
hearing to June 11, 2008, for argument by Plaintiff's counsel.

At the June 11, 2008, hearing, the Court heard further
argument on the Motion to Dismiss.  During the hearing, the Court
asked Plaintiff's counsel if she disputed the authenticity of any
of the documents which Defendant had cited in Defendant's Mem.
<u>See</u> Order to File Complete Exhibit (Doc. #9) ("Order of 6/18/08")
at 1.  Plaintiff's counsel responded that Defendant's Ex. G
(Plaintiff's Answer to Question 9 of EEO Complaint) stated on the
last page that Plaintiff had "enclose[d] sheets I would like to
be read," <u>see</u> <u>id.</u> (quoting Defendant's Ex. G at 6)(alteration in
original), and that such sheets were not included in Exhibit G,
<u>see</u> <u>id.</u>  Plaintiff's counsel also noted that the pages of Exhibit
G were numbered 3 through 8 and appeared to suggest that the
document might not be complete.[11]  <u>See</u> <u>id.</u>  Plaintiff's counsel

---

[11] The Court has determined that, notwithstanding this numbering,
pages 1 and 2 are not missing from Exhibit G.  In making this
determination, the Court relies on the following facts.  First, the
content of Exhibit G does not suggest that the first two pages were
omitted.  Second, the pages of Exhibit G are also numbered 1 to 6 as
well as 3 through 8, strongly suggesting that the numbering cited by
Plaintiff's counsel resulted from the attachment of Exhibit G to some
other two page document (after Plaintiff had already submitted Exhibit
G) and the subsequent photocopying of the entire document.  Third,
Plaintiff was given the opportunity to provide any missing pages and
failed to do so.  <u>See</u> Order to File Complete Exhibit (Doc. #9) ("Order

additionally indicated that she had not had time to compare the
exhibits which Defendant had attached to Defendant's Mem. to the
documents provided to her by Plaintiff.  See id. at 1-2.
Accordingly, the Court gave Plaintiff's counsel ten days to make
such comparison and to advise the Court whether Plaintiff
challenged the authenticity of the exhibits.  See id. at 2.

On June 16, 2008, the Court received a letter from
Plaintiff's counsel, advising that "all of the documents
submitted by the defendant in support of its motion to dismiss
... are the same as the documents provided to me by my client."
Letter to Martin, M.J., from Andrews of 6/11/08.  The letter
expressed no challenge to the authenticity of the documents.  See
id.  Based on this response, the Court found that Plaintiff did
not dispute the authenticity of the exhibits which Defendant
cited in support of the Motion to Dismiss.  See Order of 6/18/08
at 2.

With respect to Exhibit G, however, the Court found that the
exhibit was not complete because it made reference to other
documents being enclosed with the exhibit and such documents were
absent.  See id.  Observing that fairness required the Court to
consider Plaintiff's entire response to Question 9 of the EEO
Complaint, the Court directed Defendant "to file by July 2, 2008,
an amended Exhibit G which includes the enclosures which
Plaintiff states on the last page of Exhibit G she was enclosing
with her answer."  Id. (bold omitted).  The Order of 6/18/08

---

of 6/18/08") at 1 n.1 (noting that "it does not appear that there were
two additional pages of Plaintiff's response," and that "[i]f
Plaintiff contends otherwise, she may include such pages in her
objection to the Amended Exhibit G which is authorized by this
order.").  Although Plaintiff filed an objection to Defendant's
Amended Exhibit G, see Plaintiff's Objection to Defendant's Response
to the Court's Order Dated June 18, 2008 (Doc. #11) ("Plaintiff's
Objection to Amended Ex. G"), such objection does not include any
pages which Plaintiff contends were omitted from that document.

further provided that:

> Within fourteen days of the filing of the amended Exhibit G, Plaintiff shall file any objection(s) to its authenticity. If Plaintiff contends that the amended Exhibit G is not complete, Plaintiff shall identify in what respect(s) it is incomplete and shall provide whatever Plaintiff contends constitutes her complete response to Question 9 of the EEO Complaint.

Order of 6/18/08 at 2-3 (bold omitted).

On July 1, 2008, Defendant filed an Amended Exhibit G in compliance with the Order of 6/18/08. See Amended Ex. G. Plaintiff filed an objection to this filing on July 15, 2005. See Plaintiff's Objection to Defendant's Response to the Court's Order Dated June 18, 2008 (Doc. #11) ("Plaintiff's Objection to Amended Ex. G"). Thereafter, the Court took the matters under advisement.

### III.  Law

#### A.  Exhaustion of Administrative Remedies

Title VII is a vehicle through which an individual may seek recovery for employment discrimination on the grounds of race, color, religion, gender, or national origin. Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008). However, before an employee may sue in federal court on a Title VII claim he must first exhaust administrative remedies. Id.; Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990)("Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court."). The purpose of the exhaustion requirement is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation. Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996); see also Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003)("requiring exhaustion of administrative remedies serves to put an employer on notice of a violation prior to the

commencement of judicial proceedings").

The Title VII administrative process begins with the filing of an administrative charge before the Equal Employment Opportunity Commission ("EEOC").  <u>Franceshi v. United States Dep't of Veterans Affairs</u>, 514 F.3d at 85.  "With limited exceptions ... the failure to exhaust this administrative process 'bars the courthouse door.'"  <u>Id.</u> (quoting <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275, 278 (1st Cir. 1999)); <u>see also</u> <u>Roman-Martinez v. Runyon</u>, 100 F.3d 213, 216-20 (1st Cir. 1996) (holding that a federal employee's failure to contact an EEOC counselor within the limitations period causes him to lose his right to pursue a later de novo action in court).

**B.  Applicability of Fed. R. Civ. P. 12(b)(6)**

The defense that a plaintiff has failed to exhaust her administrative remedies is most appropriately considered under Federal Rule of Civil Procedure 12(b)(6).  <u>See</u> <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1022 (3rd Cir. 1997)("Timeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim."); <u>see also</u> <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 467 n.4 (5th Cir. 2004)("Rule 12(b)(6) forms a proper basis for dismissal for failure to exhaust administrative remedies."); <u>Anjelino v. New York Times Co.</u>, 200 F.3d 73, 87 (3rd Cir. 2000)("[T]he District Court should have considered the exhaustion and timeliness defenses presented in the case under Rule 12(b)(6), rather than under Rule 12(b)(1)."); <u>Robinson v. Dalton</u>, 107 F.3d at 1022 ("[T]he causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits.  A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC [ ] for

10

conciliation or resolution.") (quoting <u>Hornsby v. U.S. Postal
Serv.</u>, 787 F.2d 87, 89 (3rd Cir. 1986)(second alteration in
original)); <u>cf.</u> <u>Portela-Gonzalez v. Sec'y of Navy</u>, 109 F.3d 74,
77 (1st Cir. 1997)("[N]o one is entitled to judicial relief for a
supposed or threatened injury until the prescribed administrative
remedy has been exhausted.")(quoting <u>Myers v. Bethlehem
Shipbuilding Corp.</u>, 303 U.S. 41, 50-51, 58 S.Ct. 459 (1938)).

## C.   Rule 12(b)(6) Standard

In ruling on a motion to dismiss pursuant to Rule 12(b)(6),
the Court must view the stated facts in the light most favorable
to the pleader, <u>In Re Credit Suisse First Boston Corp.</u>, 431 F.3d
36, 51 (1st Cir. 2005); <u>see also</u> <u>Greater Providence MRI Ltd.
P'ship v. Med. Imaging Network of S. New England, Inc.</u>, 32
F.Supp.2d 491, 493 (D.R.I. 1998), taking all well-pleaded
allegations as true and giving the pleader the benefit of all
reasonable inferences that fit the pleader's stated theory of
liability, <u>Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.</u>,
421 F.3d 1, 5 (1st Cir. 2005); <u>see also</u> <u>Arruda v. Sears, Roebuck
& Co.</u>, 310 F.3d 13, 18 (1st Cir. 2002).  If under any theory the
allegations are sufficient to state a cause of action in
accordance with the law, the motion to dismiss must be denied.
<u>See</u> <u>Brown v. Hot, Sexy & Safer Prods., Inc.</u>, 68 F.3d 525, 530
(1st Cir. 1995); <u>Hart v. Mazur</u>, 903 F.Supp. 277, 279 (D.R.I.
1995); <u>see also</u> <u>Arruda v. Sears, Roebuck & Co.</u>, 310 F.3d at 18
("[W]e will affirm a Rule 12(b)(6) dismissal only if 'the factual
averments do not justify recovery on some theory adumbrated in
the complaint.'")(citation omitted).[12]  The Court, however, is

---

[12] Defendant in his memorandum cites <u>Conley v. Gibson</u>, 355 U.S.
41, 78 S.Ct. 99 (1957), for "[t]he accepted rule ... that a complaint
should not be dismissed for failure to state a claim unless it appears
beyond doubt that the plaintiff could prove no set of facts in support
of his claim which would entitle him to relief."  Defendant's Mem. at
4 (citing <u>Conley</u>, 355 U.S. at 45-46, 78 S.Ct. 99).  However, this rule

not required to "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006)(internal quotation marks omitted); see also Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d at 5 (same).  Rule 12(b)(6) is forgiving, see Campagna v. Mass. Dep't of Envtl. Prot., 334 F.3d 150, 155 (1st Cir. 2003), but it "is not entirely a toothless tiger," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005)(quoting Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 67 (1st Cir. 2004)(quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989))).  A plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." Campagna v. Mass. Dep't of Envtl. Prot., 334 F.3d at 155.

## IV. Discussion

### A. Consideration of Exhibits Attached to Motion

Plaintiff initially objects to the Motion on the ground that Defendant has gone outside the allegations of the Amended Complaint by attaching exhibits to the Motion and that Defendant has, in effect, filed a motion for summary judgment.  See Plaintiff's Memorandum in Support of her Objection to Defendant's Motion to Dismiss Plaintiff's Hostile Work Environment Claim

---

has been abrogated by Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ___, 127 S.Ct. 1955, 1969 (2007).  "Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough." Id.; see also id. ("this famous observation has earned its retirement"); Thomas v. Rhode Island, 542 F.3d 944, 948 n.4 (1st Cir. 2008)(noting that the standard stated in Conley "no longer governs in light of Twombly"); ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008)("The Supreme Court has recently altered the Rule 12(b)(6) standard in a manner which gives it more heft.  In order to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'")(quoting Bell Atl. Corp., 550 U.S. at ___, 127 S.Ct. at 1967).

("Plaintiff's Mem.") at 1.  Plaintiff contends that the Motion should be denied because it is premature and granting it would effectively preclude Plaintiff from engaging in any discovery on the issues raised.  See id.

The Court disagrees.  It is true that ordinarily a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment.  Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  However, there is a narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)); see also Robinson v. Chao, 403 F.Supp.2d 24, 28-31 (D.D.C.)(considering EEO documents and dismissing hostile work environment claim that plaintiff failed to administratively exhaust); Arizmendi v. Lawson, 914 F.Supp. 1157, 1160-61 (E.D. Pa. 1996)("In resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to plaintiff's claim which are attached to a defendant's motion.").

Here the documents at issue are official records, documents central to Plaintiff's claim, or documents sufficiently referred to in the Amended Complaint.  See Defendant's Exs. A-I, 2; see also Amended Complaint ¶ 5 (referring to Plaintiff's initial contact with EEO counselor on December 5, 2005, which is reflected in Ex. C at 2 and Ex. 2); id. (referring to the formal discrimination complaint which is Ex. E).  Plaintiff does not

dispute the authenticity of these documents.  See Order of
6/18/08 at 2 (making this finding).  Accordingly, the Court finds
that the documents may be considered without converting the
Motion into one for summary judgment.  See Alternative Energy,
Inc. v. St. Paul's Fire & Marine Ins. Co., 267 F.3d at 33-34; see
also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d
315, 321 (1st Cir. 2008)("[W]hen ... a complaint's factual
allegations are expressly linked to-and admittedly dependent
upon-a document (the authenticity of which is not challenged),
that document effectively merges into the pleadings and the trial
court can review it in deciding a motion to dismiss under Rule
12(b)(6).")(second alteration in original); Romano v. NFN Tolson,
Civil Action No. 06-573-JJF, 2007 WL 1830896, at *2 (D. Del. June
25, 2007)("[A]uthentic records documents relating to the issue of
exhaustion[] may be considered by this Court without converting
the motion to a motion for summary judgment."); McInnis-Misenor
v. Maine Med. Ctr., 211 F.Supp.2d 256, 258 (D. Me. 2002)(finding
that investigator's report, the authenticity of which was not
contested, may be considered in deciding Rule 12(b)(6) motion to
dismiss without converting the motion to one for summary
judgment).

   **B.  Completeness of Amended Ex. G**

        Plaintiff's counsel challenges the completeness of Amended
Ex. G, asserting that:

> the handwriting at the bottom of Memo 11 clearly reflects
> that Sellers stopped in midsentence and continued writing
> on the back of Memo 11.[13]   Yet, the back of Memo 11 is
> missing and, [] despite this Court's order, has not been
> provided.[]

Plaintiff's Objection to Amended Ex. G at 2.

_____

     [13] "Memo 11" is Amended Ex. G at 9 (MEMORANDUM FOR CIVILIAN
COMMISSARY EMPLOYEES from John Blythe).

                              14

The Court disagrees with counsel's apparent conclusion that some writing by Plaintiff has been omitted from Amended Ex. G. Contextually, the statement which Plaintiff wrote at the bottom of the page continues smoothly on the following page:

> Brenda Venable William McCullom and Mike Texeria are guilty of several of these (over) I would like to know why nothing happened to them?

Amended Ex. G at 9-10.  Although no punctuation follows the word "these," id. at 9, such omission is consistent with Plaintiff's writing style, see, e.g., id. at 3 ("Diane Walsh is allowed to shop in the Commissary without an ID she gets caught and nothing happens."); id. at 4 ("When [Charles] Cloud asked Steve Furtado why wasn't something done about that nothing was said."). Plaintiff's use of the parenthetical "(over)" is reasonably understood to mean that her statement continues on the following page, i.e., id. at 10, and that the reader should look at that page.[14]

In concluding that no writing by Plaintiff has been omitted from Amended Ex. G, the Court attaches significant weight to the fact that Plaintiff was specifically advised that if she contended that the amended exhibit was not complete, she was to "identify in what respect(s) it is incomplete and ... provide whatever Plaintiff contends constitutes her complete response to Question 9 of the EEO Complaint."  Order of 6/18/08 at 3. Plaintiff has not provided any words or documents allegedly omitted from Amended Ex. G.

Possibly in an attempt to explain this failure, Plaintiff's counsel "represents that the file given to Sellers by the EEO office suffers from the same infirmity," Plaintiff's Objection to Amended Ex. G at 2 n.3, apparently meaning that "the back of Memo

---

[14] Alternatively, page 10 could be a copy of the second side of what was originally a two-sided document.

11 is missing ...," Plaintiff's Objection to Amended Ex. G at 2.
The purpose of this representation appears to be to allow
Plaintiff's counsel to object to Amended Ex. G while at the same
time failing to provide the allegedly omitted words or documents.
The Court declines to excuse Plaintiff's non-compliance with the
Order of 6/18/08 on this basis.  Strikingly absent from
Plaintiff's Objection to Amended Ex. G is any affidavit from
Plaintiff attesting that the words which she wrote at the bottom
of Amended Ex. G at 9 continued onto the back side of that
document and that Amended Ex. G is not complete because of this
omission.[15]

In short, the Court is satisfied that Amended Ex. G
rectifies the problem which the Court identified in the Order of
6/18/08, see Order of 6/18/08 at 1 (noting Plaintiff's reference
to "enclose[d] sheets" that she would like to be read).
Accordingly, the Court rejects the assertion of Plaintiff's
counsel that some words written by Plaintiff have been omitted
from Amended Ex. G.[16]

_____

[15] If Plaintiff disagrees with this Magistrate Judge's findings
that the sentence which she began writing at the bottom of page 9 of
Amended Ex. G continues on the next page (Amended Ex. G at 10) and
that no words written by Plaintiff have been omitted from Amended Ex.
G, Plaintiff should support her objection to this Report and
Recommendation with an affidavit.  In such affidavit, Plaintiff should
specifically state:
    1) that each of these findings by the Court is erroneous and the
    basis for her belief that they are erroneous;
    2) the words which Plaintiff contends have been omitted from
    Amended Ex. G.  If Plaintiff is unable to recall the precise
    words, she should state their substance and the basis for her
    belief that she expressed this substance on the back of Amended
    Ex. G at 9.

[16] Plaintiff notes that pages 7-17 of Amended Ex. G are numbered 9
to 19, see Plaintiff's Objection to Amended Ex. G at 2 n.2, and
appears to suggest that because of such numbering "the attachments to
Exhibit G are still problematic," Plaintiff's Objection to Amended Ex.
G at 2.  The Court disagrees with such suggestion, for essentially the
same reasons stated in note 11, supra at 7.  To the extent that

### C.  Exhaustion

Defendant seeks dismissal of Plaintiff's hostile work environment claim (Count II) because she failed to allege this claim in her EEO Complaint, a prerequisite to filing a Title VII claim against her former federal employer.  <u>See</u> Defendant's Mem. at 1.  Typically, "in employment discrimination cases, '[t]he scope of the civil complaint is ... limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." <u>Lattimore v. Polaroid Corp.</u>, 99 F.3d at 464 (quoting <u>Powers v. Grinnell Corp.</u>, 915 F.2d 34, 38 (1st Cir. 1990))(alterations in original).  "A plaintiff in [her] administrative charge must 'describe the essential nature of the claim and ... identify the core facts on which it rests.'" <u>Ladenheim v. Am. Airlines, Inc.</u>, 115 F.Supp.2d 225, 233 (D.P.R. 2000)(quoting <u>Lattimore v. Polaroid Corp.</u>, 99 F.3d at 464 ("Even a <i>pro se</i> complainant is required to describe the essential nature of the claim and to identify the core facts on which it rests."))(second alteration in original).[17]

Here Plaintiff's EEO Complaint makes no mention of any hostile work environment claim.  <u>See</u> Defendant's Ex. E.  Thus, Defendant contends that Plaintiff's hostile work environment claim should be dismissed for failure to exhaust administrative remedies.  <u>See</u> Defendant's Mem. at 2.  Plaintiff acknowledges this, but argues that this deficiency is not fatal.  Plaintiff contends that "there are a number of documents which establish that Sellers was complaining about hostile work environment

---

someone may have numbered the attachments 9-19, such numbering does not alter their content and does not suggest that documents are missing from Amended Ex. G.

[17] The Court in <u>Ladenheim</u> appears to have inadvertently attributed this quote to <u>Powers v. Grinnell</u>, 915 F.2d 34 (1st Cir. 1990).  <u>See</u> <u>Ladenheim v. Am. Airlines, Inc.</u>, 115 F.Supp.2d 225, 233 (D.P.R. 2000) (citing <u>Powers v. Grinnell</u>, 915 F.2d at 38).

although she did not explicitly use that phrase." Plaintiff's
Mem. at 2.

### 1. Plaintiff's Response to Question 9

Plaintiff points to her handwritten statement answering
Question 9 of the EEO Complaint. <u>See</u> <u>id.</u> (citing Defendant's Ex.
G). She asserts that it contains "numerous allegations
sufficient to establish that she is complaining about a hostile
work environment." <u>Id.</u>

The Court has reviewed Plaintiff's handwritten statement.
The only allegations that might be considered suggestive of a
hostile work environment are the following.

> William [McCollum] was allowed to say what ever he wanted
> to me. When I would tell my supervisor Steve Furtado
> nothing would happen. I would walk pass him William and
> he would say comment[s].

Amended Ex. G. at 2.

> Diane Walsh was allowed to call Stephanie Lopez a Nigger.
> Nothing happened.

<u>Id.</u> at 3.

> Mary Gibson the grocery manager is allowed to yell at you
> and swear. I've gone to my supervisor several times and
> nothing happened. (Steve Furtado)

<u>Id.</u> at 3-4.

> I'm sup[p]ose[d] to do the computer part of the job.
> Steve would not give me any help. He would make sure
> William had about 7 or 8 people. I had to work in the
> freezer because William did not like being cold. I
> needed people to stock frozen food. Steve would say I
> don't have anyone to help you.

<u>Id.</u> at 4.

> Brenda [Venable] is allow[ed] to yell at you and swear.

> I asked Steve Furtado to write her up for how she was
> swearing at me, but of course Steve turned it around to

18

make me the bad person.  She's done the same thing to
Stephanie Lopez.

Id. at 5-6.

These allegations, however, must be considered in the
context of Plaintiff's response to Question 9 of the EEO
Complaint.  Question 9 states:

> EXPLAIN HOW YOU BELIEVE YOU WERE DISCRIMINATED AGAINST
> *(treated differently from other employees or applicants.)*
> *(For each allegation identified in [Question] 10, below,*
> *please state to the best of your knowledge, information*
> *and belief what incident occurred and when the incident*
> *occurred.  If you need more space, continue on another*
> *sheet of paper.)*

Defendant's Ex. E.  Plaintiff's six page (not including
enclosures) handwritten response to this question begins with the
statement:

> I would like to write a few ways I feel I was treated
> different than a white person.  In naming a few charges
> they said against me disruptive behavior, disrespectful
> conduct, failure to follow instruction, nothing compares
> to what they did.

Amended Ex. G at 1.  Thereafter, Plaintiff proceeds to detail,
for the most part, incidents of alleged misconduct by other
employees.  See id. at 1-6.  For example, she alleges that "Mike
Texeira was allowed to touch Stephanie Lopez on her behind and
management told him to watch a movie."  Id. at 1.  She further
alleges that he was "allowed to punch a person to the floor and
get arrested from the commissary and he is still working at the
commissary."  Id.  She asserts that "William McCollum is allowed
to come in late every day, 1 hour, 45 minutes or when ever[] he
felt like it and nothing happened," id., while she "received a
letter, for they said '10 minutes late,'" id.  Plaintiff also
charges that McCollum is "allowed to gamble and collect money by
betting on games."  Id.

In addition to the allegation against Diane Walsh quoted above, Plaintiff alleges that Walsh has been "allowed to shop in the commissary without an ID she gets caught and nothing happens." Id. at 3. Plaintiff further complains that Walsh "has been reported for years of being mean to customers and employees, she might get a little hit on the hand (if that)." Id.

Taking Plaintiff's statement as a whole (including the enclosures), it cannot be said that the statement fairly alleges a hostile work environment or that a reader would understand it to include such a charge. See Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275 (1998)(noting that the hostile or abusive "conduct must be extreme to amount to a change in the terms and conditions of employment"); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993)("When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.")(internal quotation marks and citations omitted); Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008)("Prescott has not shown that he was subjected to conduct that was extreme, humiliating, or that unreasonably interfered with his ability to work."); id. ("The environment must be sufficiently hostile or abusive in light of all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'") (quoting Thompson v. Coca-Cola Co., 522 F.3d 168, 180 (1st Cir. 2008)(quoting Faragher, 524 U.S. at 787-88)); see also Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992)(holding that a claim of race-based harassment is not encompassed by general allegations in an EEOC charge of unlawful termination

20

based on race); cf. Lindsay v. Pizza Hut of Am., 57 Fed. Appx. 648, 650-51 (6th Cir. 2003)(finding allegations that superviser "rolled her eyes at [plaintiff], allowed another employee to 'curse' him, and offered to wager $50 that [plaintiff] would never be a manager" were not sufficiently severe and pervasive to create an intolerable working environment).

### 2.  EEO Counselor's Report and Counselor's Intake Sheet

Plaintiff cites her description of events which appears in the EEO Counselor's Report[18] as evidence "that a hostile environment claim was – or should have been – part of Sellers' complaint."  Plaintiff's Mem. at 3.  Plaintiff also cites various statements by witnesses which appear in the EEO Counselor's Report.  See id. at 3-4 (citing Defendant's Ex. C at 6, 8-9[19]).  The final document which she cites is the EEO Counselor's Intake Sheet.  See id. at 4 (citing Defendant's Ex. 2 at 2[20]).  With respect to this final document, Plaintiff points to the statement that "[Sellers] feels that she's been treated badly at the Commissary since John Blythe began there (in 1995) up until her termination ...."  Id. at 4 (quoting Defendant's Ex. 2 at 2)(alterations in original).  Plaintiff asserts that "[e]ven more significantly, this document reflects that Sellers seeks as relief to have 'management stop harassing [her].'"  Id. (second alteration in original)

Addressing this last assertion first, what the EEO counselor actually wrote was that Plaintiff wanted "mgmt to stop harassing

---

[18] Plaintiff refers to this document as "Government Exhibit C." Plaintiff's Mem. at 3.

[19] Plaintiff's citation of Defendant's Ex. C does not include page numbers.  See Plaintiff's Mem. at 3-4.  The Court has provided this reference.

[20] Plaintiff's citation of Defendant's Ex. 2 does not include a page number.  The Court has provided this reference.

employees ...."  Defendant's Ex. 2 at 2.  This is far less
suggestive of a hostile work environment directed toward
Plaintiff in particular.  It also bears noting that Plaintiff
does not indicate that employees were being harassed based on
their membership in a protected Title VII group.

     In any case, Plaintiff's premise that information contained
in the EEO Counselor's Report and Counselor's Intake Sheet is
sufficient to allege a hostile work environment claim is
mistaken.  It is her EEO Complaint, and the investigation which
can be reasonably expected to grow out of the EEO Complaint,
which defines the scope of her civil complaint.  See Lattimore v.
Polaroid Corp., 99 F.3d at 464 ("[T]he scope of the civil
complaint ... is limited by the charge filed with the EEOC and
the investigation which can reasonably be expected to grow out of
that charge.")(quoting Powers v. Grinnell Corp., 915 F.2d at
38)(second alteration in original); see also Atkins v. Sw. Bell
Tel. Co., 137 Fed. Appx. 115, 118 (10th Cir. 2005)(holding that
even if plaintiff's intake questionnaire and sworn affidavit
could be deemed the equivalent of a formal charge, plaintiff
abandoned her retaliation claim when she later filed formal
charge which omitted any facts that would support such a claim);
Johnson v. Chase Home Fin., 309 F.Supp.2d 667, 672 (E.D. Pa.
2004)("Courts in this Circuit have found that intake
questionnaires do not serve the same function as the formal
charge, are not part of the formal charge, and therefore do not
satisfy the exhaustion requirement in circumstances such as this
where a claim marked off in the questionnaire is omitted from the
charge and where the EEOC does not investigate the omitted
claim."); Scott v. Waste Mgmt. of Arkansas S., No. 5:05CV00059-
WRW, 2006 WL 2523439, at *3 (E.D. Ark. Aug. 30, 2006)(finding
that plaintiff could not bring hostile work environment claim
that was not included in EEOC charge because it is EEOC charge

22

rather than intake questionnaire that controls scope of charge and noting that "[i]f the charge did not accurately reflect [p]laintiff's allegations or intentions in initiating the EEOC proceedings, [p]laintiff should have amended the Charge to cure technical defects").

Moreover, even if the Court were to consider the EEO Counselor's Report and Counselor's Intake Sheet, the Court is unpersuaded that the statements in these documents cited by Plaintiff reasonably convey that she was complaining about a hostile work environment.  "A plaintiff in [her] administrative charge must describe the essential nature of the claim and ... identify the core facts on which it rests."  <u>Ladenheim v. Am. Airlines, Inc.</u>, 115 F.Supp.2d at 233 (second alteration in original)(internal quotation marks omitted); <u>see also</u> <u>Lattimore v. Polaroid Corp.</u>, 99 F.3d at 464 ("Even a <i>pro se</i> complainant is required to describe the essential nature of the claim and to identify the core facts on which it rests.").  The Counselor Intake Sheet includes a listing of some twenty-five possible issues.  Defendant's Ex. 2 at 1.  The only issue checked was "Termination."  <u>Id.</u>  Notably, "Harassment (Nonsexual)," <u>id.</u>, was not checked on the Intake Sheet.  <u>See</u> <u>Atkins v. Astrue</u>, Civil Action File No. 1:07-CV-1180-TWT, 2007 WL 4373598, at *6 (N.D. Ga. Dec. 5, 2007)(dismissing plaintiff's sexual harassment or hostile work environment claim where plaintiff "did not check either of the boxes labeled 'Sexual Harassment' or 'Harassment (Non-sexual),'" and nothing in plaintiff's administrative allegations would have alerted investigators that he was claiming that he had been harassed); <u>Wells v. Dynamic Rests. LLC</u>, No. 04-CV-02279-PSFPAC, 2006 WL 118397, at *4-7 (D. Colo. Jan. 13, 2006)(holding that Plaintiff failed to exhaust her administrative remedies where plaintiff's allegation of harassment on intake form contained no facts on how she was harassed and where she

23

failed to mention any harassment on formal charge).

> ### D.  Interaction with the EEO

In concluding that Plaintiff has not administratively exhausted her hostile work environment claim, the Court is also influenced by Plaintiff's interaction (or failure to interact) with the EEO.  Plaintiff, who was represented by counsel, was notified by the EEO that the issue being investigated was her termination and that if she disagreed with this formulation of the issue she should notify the EEO within seven days.  See Defendant's Ex. H.  Plaintiff did not voice any disagreement with the issue as stated by the EEO.  This failure to respond to the framing of the issue supports a finding that Plaintiff did not exhaust her administrative remedies with respect to the hostile work environment claim.  See Clayton v. Rumsfeld, Civil Action No. SA-02-CA-231 EP, 2003 WL 25737889, at *3 (W.D. Tex. 2003)("Failure to object to the framing of the issue by the EEOC and the ALJ constitutes an abandonment of the claim.").

In addition, Plaintiff was afforded an opportunity to submit a declaration to clarify her claims during the EEO investigation, but Plaintiff failed to provide a declaration despite the EEO's investigator's request.  See Sellers I, Defendants' Oppos. to Motion to Amend Complaint, Jackson Decl.  Plaintiff had an obligation to respond to reasonable requests in the course of the agency's investigation of her discrimination and retaliation claims.  See Robinson v. Chao, 403 F.Supp.2d at 29 ("Plaintiff had an obligation to respond to reasonable requests in the course of the agency's investigation of her discrimination claims.  She did not fulfill that obligation, and, therefore, she did not exhaust her administrative remedies concerning those claims before filing them in this Court.").  As in Robinson, Plaintiff here did not fulfill that obligation, and, therefore, she did not exhaust her administrative remedies concerning her hostile work

24

environment claim.  <u>See</u> <u>id.</u>

The instant matter is similar to the circumstances addressed
in <u>Green v. Small</u>, No. Civ.A. 05-1055(ESH), 2006 WL 148740,
(D.D.C. Jan. 19, 2006).  There the plaintiff sought to include in
his judicial complaint retaliation claims, including a claim of
retaliatory hostile work environment, that were not
administratively exhausted.  <u>Id.</u> at *5.  In dismissing these
claims for want of administrative exhaustion, the court stated:

> [the retaliation claims] challenged by defendant were
> neither presented by plaintiff [to the agency] by
> amendment nor included among those accepted for
> investigation during the processing of [his]
> administrative complaint.    To the contrary, when
> notified of the single alleged instance of retaliation it
> had accepted for investigation, plaintiff made no attempt
> to augment the accepted allegation or amend his complaint
> prior to the conclusion of the investigation-this despite
> the Institution's express invitation to do so in its
> September 25, 2002[,] Notice of Acceptance of
> Discrimination Complaint.    This is simply not a case
> where the plaintiff diligently pursued the retaliation
> claims challenged by defendant.

<u>Id.</u> (second alteration in original)(internal quotation marks,
footnote, and citations omitted).

Similar to <u>Robinson</u> and <u>Green</u>, Plaintiff did not respond to
reasonable requests to clarify the scope and nature of her claim.
Accordingly, Plaintiff failed to exhaust her administrative
remedies with respect to her hostile work environment claim.  <u>See</u>
<u>Jeffers v. Chao</u>, No. Civ.A. 03-1762(RMC), 2004 WL 3257069, at *4-
5 (D.D.C. Sept. 21, 2004)(dismissing claims arising from two
discrimination complaints brought by plaintiff where plaintiff
did not aid in the investigation of his complaints beyond filing
his EEO complaints).

**E.   Clockedile v. N.H. Dep't of Corr.**

Plaintiff's final argument is that even if she has not
administratively exhausted a hostile work environment claim, a

25

judicial complaint can encompass discrete acts of retaliation reasonably related and growing out of the discrimination complaint to the EEOC.  See Plaintiff's Mem. at 4 (citing Clockedile v. N.H. Dep't of Corr., 245 F.3d 1, 6 (1ˢᵗ Cir. 2001)); id. at 4-5 (citing Gawley v. Indiana Univ., 276 F.3d 301, 314 n.8 (7ᵗʰ Cir. 2001)); see also Gawley, 276 F.3d at 314 n.8 ("[A]n employee is not required to file a separate EEOC charge alleging retaliation when the retaliation occurs in response to the filing of the original EEOC charge.").  Plaintiff notes that she filed discrimination complaints with the EEO in at least March 2001 and April 2004, see Plaintiff's Mem. at 5, and that her Amended Complaint "alleges that she was subjected to a hostile work environment for having filed earlier charges," id. Because the First Circuit has held that a hostile work environment is a form of retaliation, see Noviello v. City of Boston, 398 F.3d 76, 89 (1ˢᵗ Cir. 2005)("a hostile work environment itself can constitute a retaliatory adverse employment action"), Plaintiff posits that even if her hostile work environment claim was not administratively exhausted, this omission "is not dispositive at least to a retaliatory hostile work environment which is separate and apart from Sellers' hostile work environment claim," Plaintiff's Mem. at 5.

Plaintiff misapprehends or misapplies the holding in Clockedile.  Clockedile held that "[a]n employee may bring to a court a claim of retaliation under Title VII without first presenting that claim to the agency if the retaliation is reasonably related to and grew out of the alleged discrimination that the employee did report, 'e.g., the retaliation is for filing the agency complaint itself.'"  Mosely v. Potter, Docket No. 07-96-P-S, 2008 WL 877787, at *7 (D. Me. Mar. 27, 2008) (quoting Clockedile, 245 F.3d at 6).  Here Plaintiff cannot establish that the alleged retaliatory acts that comprise her

hostile work environment claim occurred after the filing of her
2006 EEO Complaint which is the subject of this case.[21]   Thus,
this is not the situation addressed by Clockedile.   See Mosely v.
Potter, 2008 WL 87787 at *7 (finding Clockedile inapplicable
where "plaintiff asserts that the same conduct that constituted
the discrimination of which she complains in the complaint also
constituted the retaliation of which she complains ... and *not*
that the defendant retaliated against her for filing the EEO
complaint that gives rise to this action").

    In fact, Plaintiff contends that the allegedly retaliatory
hostile work environment occurred "in retaliation for having
filed earlier charges," Plaintiff's Mem. at 5, not in retaliation
for bringing the charge on which this complaint is based, cf.
Clockedile, 245 F.3d at 4 ("We are concerned here with one
recurrent problem, namely, whether (or to what extent) a lawsuit
following a discrimination complaint can include a claim of
retaliation not made to the agency.").   Accordingly, Plaintiff's
failure to exhaust her administrative remedies with respect to
her retaliatory hostile work environment claim is not saved by
the holding in Clockedile.[22]   According, Count II should be

_____

[21] Plaintiff's termination was effective on December 10, 2005.
See Defendant's Ex. B.

[22] In her objection to Amended Ex. G., Plaintiff repeats her
assertion that she "did not have to exhaust her administrative
remedies as to her retaliation claims."  Plaintiff's Objection to
Amended Ex. G at 2.  In an effort to bring the instant matter within
the scope of Clockedile v. New Hampshire Department of Corrections,
245 F.3d 1 (1st Cir. 2001), Plaintiff notes that in her Amended
Complaint she "alleges that she filed charges before those which are
the subject of this lawsuit."  Plaintiff's Objection to Amended Ex. G
at 2 (citing Sellers I).  However, Plaintiff's citation of Sellers I
actually highlights her misapprehension of Clockedile.  While
Clockedile would allow her to litigate her hostile work environment
retaliation claim in Sellers I even without having included that claim
in her administrative charge with the EEO, see Clockedile, 245 F.3d at
6, Clockedile does not provide a basis for her to do so in the instant
action.  This is because the hostile work environment retaliation

dismissed.  I so recommend.

## V.  Summary

The Court may consider the exhibits attached to the Motion without converting it to a motion for summary judgment because: 1) the exhibits are copies of official records, documents central to Plaintiff's claim, or documents sufficiently referred to in the Amended Complaint; and 2) Plaintiff does not dispute the authenticity of the documents.  Plaintiff's objection to Amended Ex. G on the ground of incompleteness is overruled because the Court finds that no writing by Plaintiff has been omitted from the document.

Plaintiff has not exhausted her administrative remedies with respect to her hostile work environment claim (Count II) because her handwritten statement answering question 9 of the EEO Complaint does not, when viewed in context, fairly allege a hostile work environment.  Information contained in the EEO Counselor's Report and Counselor's Intake Sheet, even if it were sufficient to allege a hostile work environment, cannot cure the deficiency because it is Plaintiff's EEO Complaint and the investigation which can be reasonably expected to grow out of the EEO Complaint which defines the scope of Plaintiff's civil complaint.  In finding that Plaintiff has failed to exhaust her administrative remedies, the Court is also influenced by Plaintiff's failure, when she was represented by counsel, to voice any disagreement with the framing of the issue by the EEO and failure to respond to an EEO's investigator's request for information about her claim(s).

Finally, the holding in <u>Clockedile v. New Hampshire</u>

---

about which she complains is not for filing the agency complaint on which this action is based, <u>see</u> <u>id.</u> ("retaliation claims are preserved ... [where] the retaliation is for filing of the agency complaint itself"), but for filing the earlier EEO complaints on which <u>Sellers I</u> was based.

Department of Corrections, 245 F.3d 1 (1st Cir. 2001), does not provide a basis to allow Plaintiff's hostile work environment claim to proceed notwithstanding her failure to exhaust administrative remedies with respect to that claim.  This is because the hostile work environment retaliation about which she complains is not for filing the agency complaint on which this action is based, but for filing the earlier EEO complaints on which Sellers I was based.

**VI.   Conclusion**

For the reasons explained above, the Court recommends that Defendant's Motion to Dismiss Plaintiff's Hostile Work Environment Claim (Count II) be granted for failure to exhaust administrative remedies.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[23]  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
February 13, 2009

---

[23] The ten days do not include include intermediate Saturdays, Sundays, and legal holidays.  See Fed. R. Civ. P. 6(a).